# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CHYVAS ARIEL PEOPLES**

> **Petitioner,**

v.                                                    **Case No. 8:18-cv-1618-WFJ-AAS**

**SECRETARY, Department of Corrections,**

> **Respondent.**

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Chyvas Ariel Peoples petitions for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for manslaughter with a weapon, for which Mr. Peoples serves thirty years' imprisonment. After careful consideration of the petition, the response (Doc. 18), and the supplemental response (Doc. 26), the Court denies the petition.[1]

### Factual Background and Procedural History[2]

On October 8, 2006, Demetrius Johnson asked Mr. Peoples to pick him up at a club in the Ybor City area of Tampa, Florida. Mr. Peoples arrived at the club

_____

[1] Although afforded the opportunity, Mr. Peoples did not file a reply.
[2] This factual summary derives from Mr. Peoples's brief on direct appeal and the record. (Doc.19-2, Exs. 1–5; Doc. 19-3, Exs. 6–8, 9, 14).

around 2:30 a.m. Shauntay Cummings was at the club as well. She ran into Kim Holmes and some other friends before Holmes walked Cummings to her car.

Mr. Peoples saw Cummings and approached her vehicle to speak with her. The conversation was of a sexual nature. When Holmes heard the conversation, a verbal altercation ensued between Holmes and Mr. Peoples. Eventually a fight broke out between the two and Mr. Peoples stabbed Holmes with a knife. Holmes died from a single stab wound to the abdomen.

Mr. Peoples was arrested and charged by Information with second-degree murder with a weapon. He unsuccessfully asserted self-defense based on Holmes's alleged attempt to commit a robbery by forcibly taking Mr. Peoples's jewelry. A jury convicted Mr. Peoples of the lesser-included offense of manslaughter with a weapon. He was sentenced to thirty years' imprisonment.

The conviction and sentence were affirmed on appeal. (Doc. 19-3, Ex. 16). Mr. Peoples's motion for rehearing was denied. (Doc. 19-3, Ex. 18). The state courts subsequently denied Mr. Peoples's myriad post-conviction motions challenging his conviction and sentence and his petitions for writs of habeas corpus, prohibition, and certiorari.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 655, 694 (2002). A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt' . . . .") (citations omitted). When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id*. "[T]he State may rebut the presumption by showing that the

unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

As *Pinholster* explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward looking language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

563 U.S. at 181–82. Mr. Peoples bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

## **Ineffective Assistance of Counsel**

Mr. Peoples claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46

F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. *Strickland*

requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Mr. Peoples must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To meet this burden, Mr. Peoples must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Mr. Peoples cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) ("To state the

obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The required extent of counsel's investigation was addressed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317.  "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added).  "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense.  Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318.  "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d), Mr. Peoples must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and §
2254(d) are both 'highly deferential,' and when the two apply in tandem, review is
'doubly' so." *Richter*, 562 U.S. at 106; *see also Pinholster*, 563 U.S. at 202 (An
applicant must overcome this "'doubly deferential' standard of *Strickland* and [the]
AEDPA."); *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)
("Double deference is doubly difficult for a petitioner to overcome, and it will be a
rare case in which an ineffective assistance of counsel claim that was denied on the
merits in state court is found to merit relief in a federal habeas proceeding.").

### Grounds for Relief

Mr. Peoples presents twenty-nine grounds for relief. Section I of this order
addresses grounds that are defaulted and procedurally barred from federal review.
Section II addresses grounds of trial court error and ineffective assistance of counsel
related to pretrial matters and immunity under Florida's Stand Your Ground law.
Section III addresses grounds of trial court error and ineffective assistance of counsel
during the trial and sentencing.

### I.      Exhaustion and Procedural default

**Grounds One and Two**

In Ground One, Mr. Peoples contends that the trial court erred by allowing the
State "to elicit hearsay testimony from every non-law enforcement witness where
hearsay testimony became a feature of the [S]tate's case and went to the heart of the

defense theory." (Doc. 1, p. 9). In Ground Two, Mr. Peoples contends that the trial court erred by "refusing testimony pertaining to the victim's character where self-defense was the sole defense at trial." (Id., p. 11). Mr. Peoples argues that these alleged errors resulted in a denial of his federal rights to a fair trial and due process under the Fifth and Fourteenth Amendments.

The Respondent opposes each of these grounds as unexhausted and procedurally barred because Mr. Peoples neither preserved a federal constitutional claim at trial nor presented a federal constitutional claim to the state court on direct appeal. (Doc. 18, pp. 19–20).

Before a federal court can grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson v. Brewster*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). To exhaust a claim, a petitioner must present the state court with both the particular legal basis for relief and the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion

of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, a petitioner must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate not only that an error at the trial created the

possibility of prejudice, but that the error worked to his actual and substantial disadvantage and infected the entire trial with "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In other words, a petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, a petitioner must show constitutional error coupled with "new reliable evidence—whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324.

The record shows that, although Mr. Peoples raised these grounds in his direct appeal, he argued only a violation of state law. (Doc. 19-3, Ex. 9 at 20–31). He did not cite a federal constitutional amendment or federal law nor did he label the ground "federal." Consequently, Mr. Peoples did not "fairly present" his federal claims to

12

the state court.[3] *See Baldwin*, 541 U.S. at 27; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("In other words, 'to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'") (quoting *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007)); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (finding that *Baldwin* and *Lucas* "stand for the proposition that a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim").

Mr. Peoples's failure to present his federal fair trial and due process claims to the state court deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845; *see also Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law . . . cannot constitute fairly presenting a federal claim to the state courts"). Mr. Peoples also cannot return to state court to present these new federal grounds in a successive appeal. *See* Fla. R. App. P. 9.140(b)(3).

---

[3] The Court notes that Mr. Peoples did include a quote from a Florida Supreme Court case (*Johnson v. State*, 969 So. 2d 938 (Fla. 2007)) in his "Standard of Review" section for Ground I on direct appeal that was itself quoted from a United States Supreme Court Case (*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)). (Dkt. 19-3, Ex. 9 at 20). This was not enough to give fair notice of any federal basis for the relief Mr. Peoples' sought in Ground I. The subject quote pertained solely to review standards on direct appeal. *Cooter*, moreover, is a case about Rule 11 sanctions under the Federal Rules of Civil Procedure, not hearsay or criminal law generally. *See generally* 496 U.S. 384, 388–91.

Mr. Peoples did not file a reply and does not challenge the Respondent's assertion of procedural default. Consequently, because Mr. Peoples satisfies neither exception to procedural default, both Ground One and Ground Two are procedurally barred from federal review.

**Ground Twenty-Four**

Mr. Peoples contends that his "[c]onvi[c]tion [was] obtained by a violation where Mr. Peoples'[s] sentence was illegal under Rule 3.800[,] Florida Rule of Criminal Procedure[,] where the charge of manslaughter could not be reclassified to a first degree felony because of the use of a pocket knife because manslaughter was not a proper lesser included offense of second degree murder because of the defective instruction, leaving the next lesser lower offense [of] aggravated battery (deadly weapon) the only proper lower offense . . . ." (Doc. 1, p. 46). Mr. Peoples argues that the jury was "not provided a special interrogatory to make the finding [o]f whether or not the [three and a half] inch knife was a weapon or not or if Mr. Peoples used or threatened to use it in a way likely to cause death or great bodily harm." (Id.). Mr. Peoples avers that he raised this ground in his state Rule 3.800(a) motion and that the state court's rejection of the ground deprived him of his federal rights to due process and a fair trial under the Fifth and Fourteenth Amendments. (Doc. 1, pp. 46–47).

The Respondent argues that, contrary to Mr. Peoples's contention, "the issue of reclassification of the charge to a first-degree felony based on the use of a pocketknife was not raised in that motion." (Doc. 18, p. 62). The Respondent also points out that Mr. Peoples states in his federal petition that "[t]his claim is currently pending in the lower/appellate court" but he fails to provide a case number or type of proceeding in which the ground is allegedly pending. (Doc. 1, p. 44). The Respondent correctly argues that this ground is unexhausted and procedurally defaulted because Mr. Peoples did not present the ground to the state court. State procedural rules preclude Mr. Peoples from returning to state court to present his federal ground in either a second direct appeal or an untimely post-conviction motion, rendering the ground procedurally defaulted.  Mr. Peoples did not file a reply and does not challenge the assertion of procedural default.

Mr. Peoples fails to demonstrate cause for the default of his federal due process and fair trial claims because he fails to show that some "external factor" prevented him from raising the federal claims in state court. *Wright*, 169 F.3d at 703. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Mr. Peoples satisfies neither exception to procedural default, Ground Twenty-four is procedurally barred from federal review.

## II.    Trial court error & ineffective assistance of counsel – pretrial matters & immunity

**Ground Twenty-five**

In Ground Twenty-Five, Mr. Peoples contends that "the lower court exceeded its jurisdiction over the Defendant because Fla. Statute 776.032 protected Mr. Peoples with statutory immunity from criminal prosecution." (Doc. 1, p. 47). He argues that once he asserted self-defense, the state court was required to make an "immunity determination" in order to obtain jurisdiction over him. Mr. Peoples alleges that the state court's rejection of this ground in his state Writ of Prohibition (Doc. 21-5, Ex. 33) deprived him of his federal rights to a fair trial and due process under the Fifth and Fourteenth Amendments.[4]

The record shows that, while Mr. Peoples did assert a defense of self-defense at trial, he did not assert a pre-trial "Stand Your Ground" defense under section 776.032, Florida Statutes. (See Doc. 21-5 at 78.) Accordingly, Mr. Peoples was not "protected . . . with statutory immunity from criminal prosecution" as he alleges. Consequently, he fails to show that the state court's rejection of this ground resulted in the violation of a federal constitutional right. Ground Twenty-five warrants no relief.

**Grounds Twenty-six, Twenty-seven, and Twenty-nine**

---

[4] The state appellate court denied the petition for writ of prohibition without elaboration and denied Mr. Peoples's motion for rehearing *en banc* and his request for a written opinion. (Doc. 21-5, Exs. 34, 35, 36).

In Ground Twenty-six, Mr. Peoples contends that his "[c]onviction [was] obtained by a violation where law enforcement denied [him] equal protection of Fla. Stat. 776.032(2) by refusing to allow [him] to utilize Florida Law and avoid prosecution." (Doc. 1, p. 48). He further alleges that law enforcement failed to "make the mandatory probable cause determination for all stand your ground cases," resulting in a violation of his federal rights to a fair and impartial trial and due process. (Id.). In Ground Twenty-seven, Mr. Peoples contends that the state court denied him both an immunity hearing under the state Stand Your Ground statute and the appointment of counsel for such hearing, resulting in a violation of his federal rights to a fair and impartial trial and due process. (Doc. 1, pp. 49–50). In Ground Twenty-nine, Mr. Peoples again alleges that the state court deprived him of his rights to due process and equal protection by denying him an immunity hearing and the appointment of counsel for that hearing.[5]

Mr. Peoples's arguments that he qualified for immunity from prosecution under Florida's "Stand Your Ground" law and that he was entitled to a hearing under the state statute are questions of state law. These arguments, as well as his contention that the state court failed to adhere to the requirements of the state statute, involve statutory interpretation of a state law by state courts, not federal constitutional error.

---

[5] The state appellate courts denied these allegations in Mr. Peoples's state petition for a writ of prohibition and in his Motion for Hearing and Appointment of Counsel. (Doc. 21-5, Exs. 33, 34, 38b, 38c).

This Court will not re-examine state-court determinations on issues of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Accordingly, Grounds Twenty-six, Twenty-seven, and Ground Twenty-nine are not cognizable in this federal habeas proceeding. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief."). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" *Id.* (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)). Grounds Twenty-six, Twenty-seven, and Twenty-nine warrant no relief.[6]

**Ground Nine**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by (a) presenting an "unreasonable, factually inaccurate, and factually unsupported defense to the exclusion of the far more and only reasonable and factually viable defense which was plausible under the facts of Defendant's case," and (b) failing to move for a pretrial evidentiary hearing "to invoke and establish 'stand your ground immunity.'" (Doc. 1, p. 21). Mr. Peoples alleges that the "robbery/self-defense"

---

[6] Notwithstanding the lack of cognizability, both grounds are unexhausted and procedurally barred because Mr. Peoples argued only violations of state law in his petition for a writ of prohibition and his Motion for Hearing and Appointment of Counsel law and did not present the federal claims to the state court. *See* Doc. 21-5, Exs. 33, 38b. In addition, the Court notes that Mr. Peoples has shown no error by the state courts, let alone an egregious one that resulted in a denial of due process or equal protection. The state courts reasonably interpreted and applied state law in rejecting Mr. Peoples' claimed entitlement to an immunity hearing following his conviction at trial. The Court will not second-guess their determinations.

defense was "patently unreasonable where a far more plausible and, in the circumstances only, reasonable defense could have been presented through effective defense consideration and evaluation and other available witnesses." (Doc. 1, p. 21) Mr. Peoples contends that, absent counsel's alleged error, he "would have been able to argue that Defendant had the right to stand his ground in defense of both his person . . . and his property." (Id., p. 22). He further contends that "counsel failed in her duty to stay apprised of a significant development in self-defense law" when "[t]wenty-six days before the defendant's trial the Appeal Court in *Peterson v. State*, 983 So. 2d 27 (Fla. 1st DCA 2008), set forth the appropriate pre-trial procedure for deciding claims of stand your ground immunity." (Id.). Mr. Peoples argues "that [b]ut for counsel's unreasonable investigation and failure to inform herself of the current state of the self-defense law, the defendant would have been able to claim protection under the statute at a pretrial evidentiary hearing." (Id.).

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-2, Ex. 20, part 4, Final Order Denying Motions for Post-Conviction Relief, pp. 18–24) (court's record citations omitted):

> At the evidentiary hearing Mobley testified based on her review of the discovery and the version of events Defendant told her, the trial strategy she developed was self-defense based on robbery, specifically that the victim took the Defendant's jewelry as he and others attacked Defendant, and that Defendant was entitled to and did defend himself from the robbery. Mobley testified Defendant told her that the victim

tried to rob him and that it was a robbery from day one. Mobley testified self-defense was her strategy from the beginning, that she consistently argued self-defense throughout trial, and that there was no other potential defense she could have raised. Mobley testified she explained to Defendant the defense that he was robbed was within [the] context of self-defense, stating, "just about every time that I met with Mr. Peoples we discussed the actual facts or what happened and based on his version of what happened we were discussing the self-defense." Mobley testified four defense witnesses at trial testified to the robbery, and that Defendant was being attacked and robbed by [the] victim and his friends. Mobley testified self-defense with [an] underlying forcible felony [of] a robbery was an accurate defense to present because the testimony from witnesses suggested they believed victim and his friends were trying to rob Defendant of his jewelry and this was consistent with Defendant's story.

With regard to the possibility of arguing the theory of excusable homicide along with the theory that Defendant was defending himself against an aggravated battery, felony battery, or aggravated assault, Mobley testified she considered such a self-defense theory, looked into that as a possible defense, but did not feel the evidence supported such a defense:

> [Ms. Mobley] ... I don't believe that with the evidence that was brought out that we had enough to get an—to put in the aggravated battery or the felony battery based on the witness testimony that we had.

> [The State] Okay. And aggravated battery—there's two types of aggravated battery; correct?

> [Ms. Mobley] Yes.

> [The State] Aggravated battery based upon a deadly weapon.

> [Ms. Mobley] Yes.

[The State] Were there any witnesses—did the victim or any of the witnesses in this case have a weapon that was out and displayed during this altercation?

[Ms. Mobley] No.

[The State] The only weapon was the knife that Mr. Peoples had?

[Ms. Mobley] Yes.

[The State] The other portion of the aggravated battery would be based upon a theory of great bodily harm or permanent disfigurement.

[Ms. Mobley] Yes.

[The State] Okay. Had Mr. Peoples suffered great bodily harm or permanent disfigurement?

[Ms. Mobley] Had he, no.

[The State] Okay. And did Mr. Peoples tell you during the pendency of the case that he had broken his nose and broke his hand?

[Ms. Mobley] Yes.

[The State] Did the jail take x-rays of Mr. Peoples?

[Ms. Mobley] Yes.

[The State] What were the x-ray results?

[Ms. Mobley] There were no fractures.

[The State] Either to his hand or his nose?

[Ms. Mobley] No.

[The State] And that was something that you researched?

[Ms. Mobley] Yes.

[The State] Okay. So you didn't have a plausible or facts enough to be able to ask for the forcible felony based upon aggravated battery?

[Ms. Mobley] Correct.

[The State] Okay. Now felony battery also requires great bodily harm as well.

[Ms. Mobley] Yes.

[The State] And lastly, aggravated assault would require a deadly weapon.

[Ms. Mobley] Yes.

[The State] And you didn't have any of this?

[Ms. Mobley] Exactly.

[The State] So the only—based upon the facts in this case and based upon what Mr. Peoples was telling you, the only viable defense that you could have argued in the self-defense context would have been a robbery or attempted robbery?

[Ms. Mobley] Yes.

Mobley testified she was aware of self-defense and stand your ground but she did not discuss the possibility of filing a stand your ground immunity motion with the Defendant. Having received course instruction of the same, Mobley advised there was no set mandate that she had to file such a motion in every case, and that it was left to the discretion of the attorneys. In response to why she did not file a stand your ground motion and seek an immunity hearing, Mobley testified

> "I talked in general about pretrial motions with Mr. Peoples and what I told him was that I did not want to put the defense witnesses in a position where they testifying more than once if I didn't have to, because specifically I didn't want to give them—or the State the opportunity to have more than one bite of the apple, so to speak, with cross-examining the witnesses and I didn't want—have the witnesses in a position of making any inconsistent statements that were on the record."

Mobley testified she made a strategic decision to not call witnesses prior to trial at bond hearings or motion hearings. Mobley testified she explained this strategy to the Defendant when he asked to file another bond motion [and] that she explained she did not call fact witnesses because she did not want to give [the] State an opportunity to cross them prior to trial. Mobley testified if the immunity motion works "it's great" but if it doesn't work then Defendant's and witness's testimony is "out there."

Mobley testified she didn't think a stand your ground motion would have been successful because of the judge's observations made during his denial of both the motion for judgment of acquittal and again at sentencing. The judge stated Mr. Johnson's testimony was "improbable and dubious" and Ms. Lamb (another eyewitness who did not know the parties) was " the most credible witness." Mobley testified she believed based on the judge's comments "especially since he said it more than once, that he really believed her versus anybody else. So based on that, I do not believe that a stand your ground motion would have prevailed." Mobley testified the judge's comments in denying Defense's judgment of acquittal shed light on how he viewed the evidence in the case, who was credible, who was not, based on the same evidence and witnesses that would have been presented at a stand your [ground] hearing, and thus, Mobley believed a stand your ground motion would have had the same result, a denial.

The record reflects in denying the defense's motion for judgment of acquittal the court stated it viewed Ms. Lamb as the most credible witness and that Mr. Johnson was not a credible witness.

At the evidentiary hearing, Defendant testified that he never once said that he had been "robbed," but that his former defense counsel was under the impression that that was what he was suggesting, and they decided to go with the robbery/self-defense theory of defense. Defendant further testified that he didn't even know he was robbed of the bracelet until the trial. Defendant specifically stated:

> "But my argument and my, my defense was I was defending myself from a fight. That's how this all started, from an argument and a fight, not a robbery. I didn't believe these guys came up to me to rob me or take anything from me, but essentially that's what could have been once my bracelet popped off and, and they were grabbing at my chains. So I think when I explained that to counsel, she took off with the robbery defense."

"Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Further, the defendant carries the burden of overcoming the presumption that a decision might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *see also Asay v. State*, 769 So. 2d 974, 984 (Fla. 2000). "Counsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000).

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, and the record the Court finds counsel's testimony to be more credible than the Defendant's. The Court finds counsel made a strategic decision to argue self-defense to a robbery as opposed to an aggravated battery. The Court finds counsel's trial strategy was reasonable as it was supported by the Defendant's version of the events, the physical evidence, including the fact Defendant's bracelet was later found in [the] victim's possession, and testimony of defense witnesses; whereas, self-defense to aggravated battery was not supported by the evidence or Defendant's version of the events. Additionally, the Court finds counsel made a strategic decision to not file a stand your ground immunity motion prior to trial so as to not subject defense witnesses to State cross examination and potential impeachment at trial through prior inconsistent statements. The Court

will not second guess counsel's reasonable strategic decisions. *See Johnson*, 769 So. 2d at 1001. Further, the Court finds because counsel argued self-defense, through robbery, at trial and at judgment of acquittal both of which were rejected by the jury and by the court, Defendant cannot demonstrate prejudice through counsel's failure to argue [a] pretrial stand your ground immunity motion or argue self-defense through aggravated battery. For the foregoing reasons, no relief is warranted . . . .

The state post-conviction court found counsel more credible than Mr. Peoples. Mr. Peoples presents no clear and convincing evidence to overcome the presumption of correctness afforded the state post-conviction court's credibility determination. *See* 28 U.S.C. § 2254(e)(1); *Jones*, 540 F.3d at 1288. Moreover, he does not show that counsel's chosen trial strategy, viewed objectively, was so "patently unreasonable that no competent attorney would have chosen it." *Dingle*, 480 F.3d at 1099. Many reasonable attorneys would avoid subjecting important factual witnesses to cross-examination prior to trial. Absent a demonstration of deficient performance or prejudice, Mr. Peoples cannot establish his claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691–92. Accordingly, Mr. Peoples fails to meet his burden of proving that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Twenty**

Mr. Peoples contends that the State withheld evidence favorable to the defense and knowingly presented false and misleading evidence to the state court during both

25

a pretrial hearing and the trial. Mr. Peoples alleges that the State possessed "significant and material exculpatory evidence favorable to Defendant" that the victim and his associates "had a documented history of violence and aggressive behavior in Ybor as reflected by numerous arrest incidences." (Doc. 1, p. 40). He further alleges that the State had information that the victim and his associates were affiliated with a gang. Mr. Peoples argues that the State's failure to disclose this "exculpatory" evidence likely changed the outcome of both a pretrial motion *in limine* and the trial, resulting in a violation of his rights to due process and a fair trial under the Fifth and Fourteenth Amendments.

The state post-conviction court denied this ground after an evidentiary hearing as follows (Doc. 21-3, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief, pp. 43–45) (court's record citation omitted):

> Defendant alleges the State withheld evidence favorable to the defense and knowingly presented false and misleading evidence to the court at a pretrial hearing and to the jury at trial. Specifically, Defendant asserts that the State, through its law enforcement contacts, had evidence and information that victim Holmes and his associates were members of a Blood gang known as "Sex, Money, Murder." Defendant further claims Holmes and his associates had a history of violent and aggressive behavior in Ybor, as documented by their numerous arrests. Although the State was aware of the violent and aggressive history and gang affiliation of Holmes and his associates, it successfully argued to the trial court that any reputation or character evidence should be excluded. Defendant further argues that, at trial, the State falsely and misleadingly depicted Holmes as an innocent, chivalrous young gentleman who was only trying to get home to "momma." Defendant asserts that the withheld evidence would have significantly and materially supported

26

his defense of self-defense and would have changed the outcome of both the hearing on the motion in limine as well as the trial.

The Court finds Defendant is asserting a violation of *Brady v. Maryland*, 373 U.S. (1963). In order to set forth a facially sufficient *Brady* claim, a defendant "must allege specific facts that, if accepted as true, establish a prima facie case that (1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced." *Allen v. State*, 854 So. 2d 1255, 1259 (Fla. 2003). The Court previously found [this] ground . . . facially sufficient and granted a hearing.

At the evidentiary hearing Mobley testified she never saw the police reports Defendant attaches to his motion and that [this] ground . . . is contradictory to Defendant's argument in ground 1, stating,

> "[I]t seems like Mr. Peoples is saying that he knew and I knew that there was specific act evidence that we could have used against or to, to get in Mr.—against Mr. Holmes, which sounds like we already had this information. But then it sounds like in this allegation . . . that he's saying that we didn't have this information because the State never gave it to us. And so, it's—and basically like I indicated before, had I known about it or had this information and known—and if I had been told that Mr. Peoples specifically had—knew about specific act evidence personally, then I would have had him testify at the motion in limine hearing anyway. So to me it kind of— they're contradictory in my opinion."

For the foregoing reasons, no relief is warranted on [this] ground . . . .

*Brady v. Maryland*, 737 U.S. 83, 87 (1963), holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." As the post-conviction court explained,

27

to establish a *Brady* violation, a petitioner must show that (1) the evidence is favorable to the accused, either because it is exculpatory or it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence is material. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Given this, Mr. Peoples has failed to establish a viable *Brady* claim. Even assuming that the evidence Mr. Peoples complains of was exculpatory and that the State willfully or inadvertently suppressed it, the evidence was not material. Counsel credibly testified at the evidentiary hearing that Mr. Peoples told her that he did not know any specifics about "Sex, Money, Murder" or Mr. Holmes prior to the night he killed Mr. Holmes. (Doc. 21-3, Ex. 20, pp. 84–86). Rather, he learned a number of things from a friend after the fact. (Id.). It follows that the allegedly exculpatory evidence could not have come into evidence at trial as either specific act evidence or community reputation evidence. Indeed, as counsel further testified, in considering a motion in limine pertaining to other character evidence of Mr. Holmes, the trial court specifically indicated that the evidence could be introduced if Mr. Peoples knew of the specific acts. (Id.). Mr. Peoples had no knowledge. Mr. Peoples

therefore fails to meet his burden of proving that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (d)(2). The alleged suppression of evidence Mr. Peoples complains of did not prejudice him.

### III.   Trial court error & ineffective assistance of counsel – trial & sentencing

**Ground Four**

Mr. Peoples contends that the trial court deprived him of his federal right to "a fair and impartial trial pursuant to due process" by overruling his objection to alleged hearsay testimony by Detective Brent Holder. (Doc. 1, p. 13). During the trial the prosecutor asked Detective Holder, "And this information that you got there was a robbery, who did that stem from?," to which Detective Holder replied, "That actually came from Mr. Peoples." (Doc. 19-3, Ex. 6, trial transcript, p. 528). Trial counsel objected to Detective Holder's answer on hearsay grounds and the trial judge overruled the objection. (Id.). Mr. Peoples argues that "Detective Holder's response to the [S]tate's question gave the impression to the jury that Mr. Peoples had actually spoken to him personally, when in fact Detective Holder was testifying to a statement made by non-testifying witness Willie Cole." (Doc. 1, p. 13). Mr. Peoples further argues that "[b]y Detective Holder being allowed to testify over objection to the jury about hearsay statements allegedly made by Mr. Peoples, the trial court abused its discretion and allowed law enforcement to testify to hearsay and imply

that Mr. Peoples was fabricating testimony or suborning perjury." (Id.). The state appellate court denied relief on this ground in Mr. Peoples's direct appeal. (Doc. 19-3, Ex. 16).

Federal habeas corpus relief is not available to correct an error of state law unless the error is so egregious as to deny due process or equal protection. *Pulley v. Harris*, 465 U.S. 37 (1984). *See also Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1985) (noting that federal habeas corpus is not the proper vehicle to correct state evidentiary rulings). Generally, a state court evidentiary ruling cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202–02 (1977)). When a petitioner claims that the state court's evidentiary ruling deprived him of due process, the habeas court asks only whether the error was of such magnitude as to deny the petitioner his right to a fundamentally fair trial, i.e., whether the error "was material as regards a critical, highly significant factor." *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994); *see also Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014) (noting that a federal court's authority to review state evidentiary rulings is "severely restricted" in a habeas action). "[S]uch trial court errors are subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error 'had

30

substantial and injurious effect or influence in determining the jury's verdict.'" *Sims*

*v. Singletary*, 155 F.3d at 1312 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623

(1993)).

Mr. Peoples establishes no error in the admission of the challenged testimony,

let alone an egregious one that deprived him of due process. After testifying that the

subject information "actually came from Mr. Peoples[,]" Detective Holder clarified

that Mr. Cole and Mr. Peoples were sharing a cellphone and that "that's where the

information had come from." (Doc. 19-3, Ex. 6, trial transcript, p. 528). In other

words, Detective Holder testified that he had obtained Mr. Peoples' own statements

from a cell phone obtained during his investigation. These statements, moreover,

were clearly against Mr. Peoples' own interests because they implied that Mr.

Peoples was attempting to fabricate a robbery defense. This being the case, the

testimony Mr. Peoples complains of was admissible under Florida's admissions by

a party opponent exception to hearsay. *See* Fla. Stat. § 90.803(18)(a) ("the following

[is] not inadmissible as evidence, even though the declarant is available as a witness

. . . A statement that is offered against a party and is: The party's own statement in

either an individual or a representative capacity"). The Court also notes that, even if

improperly admitted, Mr. Peoples cannot demonstrate that the trial court's admission

of the testimony on this singular question adversely affected his trial to such a degree

as to amount to a violation of his federal rights to either due process or a fair trial.

The state appellate court neither unreasonably applied controlling Supreme Court precedent nor unreasonably determined the facts by rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (d)(2).

## Ground Fifteen

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not making "appropriate" objections or informing the court of "specific legal grounds supporting objections to inadmissible and highly prejudicial hearsay testimony by Detective Brent Holder." (Doc. 1, p. 31). Mr. Peoples asserts that Detective Holder testified about "statements allegedly made by non-testifying witness Willie Cole as to statements allegedly made by Defendant." (Id.). Specifically, Mr. Peoples argues that counsel should have objected to the challenged testimony as (1) double hearsay, (2) violative of *Crawford v. Washington*, 541 U.S. 36 (2004), and (3) inadmissible under state evidentiary rules as unduly prejudicial because "the testimony falsely and misleadingly implied Defendant to have committed or attempted to commit the crimes of suborning perjury and tampering with a witness." (Id., p. 32). He alleges that counsel's "general and unspecific 'hearsay' objection was insufficient to have appraised the trial court of the valid and specific legal grounds upon which this testimony by Detective Holder was inadmissible." (Id.). Mr. Peoples argues that this alleged error was "highly damaging to the credibility" of his asserted defense and bolstered the State's case, resulting in

a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-3, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief, pp. 31–34) (court's record citations omitted):

> Defendant alleges counsel was ineffective for failing to adequately object to inadmissible and highly prejudicial hearsay testimony by Detective Brent Holder. Defendant asserts that Detective Holder testified that Willie Cole, a non-testifying witness, told him that Defendant mentioned the robbery to him. The testimony Defendant alleges was improper is as follows:
>
> > [The State] And then from talking to Yamira Toledo did she put you in contact with someone named Willy Cole?
> >
> > [Detective Holder] Yes.
> >
> > [The State] Okay. And then did you go out and interview Willy Cole?
> >
> > [Detective Holder] I did.
> >
> > [The State] Okay. And this information that you got there was a robbery, who did that stem from?
> >
> > [Detective Holder] That actually came from Mr. Peoples.
> >
> > [Counsel]: Objection; hearsay.
> >
> > The Court: Overruled.
> >
> > [The State] That came from Mr. Peoples?

[Detective Holder] That is correct.

Defendant asserts that counsel's general hearsay objection was insufficient and counsel should have argued the statement was double hearsay, to which the Defendant's statement hearsay exception did not apply. Defendant alleges counsel should have also argued in the objection that the statements violated Defendant's Sixth Amendment right to confront and cross examine [a] witness under *Crawford*. Defendant asserts the statement was unduly prejudicial as it implied that Defendant attempted to suborn perjury and tamper with a witness. Defendant alleges that a more specific objection by counsel would have been sustained and excluded Detective Holder's overly prejudicial testimony. Defendant alleges he was prejudiced because but for counsel['s] deficient performance creating an unfair advantage and improperly influencing the jury, a reasonable probability exists the outcome of his trial would have been different.

At the evidentiary hearing Mobley testified that on cross at trial Holder testified he received a call about someone pulling a chain off which the State objected to as hearsay and the objection was overruled. The State recalled Holder who testified that a man named Willie Cole shared a cell with the Defendant at the county jail and that Defendant made statements to Cole that the incident was a robbery. Mobley testified [co-counsel] Ms. Fulgueria objected twice to hearsay, one was sustained, one overruled.

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, and the record the Court finds defense counsel properly objected to hearsay and finds double hearsay and relevancy were not proper objections to make based on Detective Holder's testimony of statements attributed to the Defendant.

Further, with regard to the allegation that trial counsel should have objected on *Crawford* grounds, a review of the transcript reflects that there were no grounds upon which a *Crawford* objection should have been made. During his initial testimony, on cross-examination, trial counsel elicited testimony from Detective Holder regarding the alleged hearsay statement by Willy Cole:

[Ms. Mobley] Okay. Now, Ms. Over asked you a question about whether or not anyone has called you since this happened and reported a robbery taking place in that parking lot when this was going on, correct? Remember that question?

[Detective Holder] Yes, ma'am.

[Ms. Mobley] Okay. Now, isn't it true that when you were doing your interviews that someone did mention that people—that somebody was grabbing chains while this was going on?

[The State] I'm going to object to—this calls for hearsay.

[Ms. Mobley] Judge, may we approach?

[The Court] Overruled.

[Ms. Mobley] You can answer.

[Detective Holder] Actually there were—yes. During my initial interviews, it was told to me that Mr. Peoples was grabbing Mr.—the victim's chain as he was there.

[Ms. Mobley] And what about the opposite?

[Detective Holder] During my initial interviews, I don't recall anybody—

[Ms. Mobley] No, not— I meant any time. She asked if any time since this has happened until now has anybody called you or have you spoken to anybody and they mentioned a robbery. In any other interview regarding this case, did someone else mention to you chains being pulled, Mr. Peoples'[s] chain being pulled?

[Detective Holder] Yes. I did receive one call about a chain being pulled off; yes.

35

The following day, Detective Holder was recalled, and more specifically provided testimony regarding the alleged hearsay statement from Willy Cole:

> [The State] And then from talking to Yamira Toledo did she put you in contact with someone named Willy Cole?
>
> [Detective Holder] Yes.
>
> [The State] Okay. And then did you go out and interview Willy Cole?
>
> [Detective Holder] I did.
>
> [The State] Okay. And this information that you got there was a robbery, who did that stem from?
>
> [Detective Holder] That actually came from Mr. Peoples.
>
> [Counsel]: Objection; hearsay.
>
> The Court: Overruled.
>
> [The State] That came from Mr. Peoples?
>
> [Detective Holder] That is correct.

Because there was no actual statement admitted from Mr. Cole in violation of Defendant's Sixth Amendment rights, there was no basis upon which defense counsel should have made a *Crawford* objection. Defense counsel "cannot be deemed ineffective for failing to make a meritless objection." *Hitchcock v. State*, 991 So.2d 337, 361 (Fla. 2008). As such, no relief is warranted on [this] ground . . . .

The Confrontation Clause provides that in a criminal prosecution, "the accused shall enjoy the right . . . to be confronted by the witnesses against him." U.S. Const. Amend. VI. *Crawford v. Washington*, 541 U.S. 36 (2004), holds (1) that

the Confrontation Clause bars admission of testimonial evidence from an absent witness unless the witness is both unavailable and the defendant had a prior opportunity to cross-examine the witness, and (2) that a defendant has the right to confront a third party who makes an out-of-court statement that is testimonial in nature.  541 U.S. at 68.  Because no out-of-court testimonial statement from Mr. Cole was admitted at trial, as explained above in Ground Four, counsel had no basis to object or raise a *Crawford* violation as Mr. Peoples suggests.  Moreover, the state court's conclusion that no basis for either a relevance objection or a double hearsay objection existed is afforded deference.  *See Will*, 278 F. App'x at 908.  Mr. Peoples fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Six**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by failing to "investigate, procure, and present evidence to support the admission of victim reputation evidence as necessary to oppose [the] State's motion in limine and to substantiate [the] admissibility of such evidence at trial to support [the] asserted defense of justifiable or excusable homicide which had the effect of denying Defendant a fair and impartial trial pursuant to due process and effective assistance of counsel" under the Fifth, Sixth, and Fourteenth Amendments.  Specifically, Mr.

Peoples alleges that trial counsel failed to investigate and present the following

evidence (Doc. 1, p. 16):

> (1)    Mr. Peoples'[s] own testimony establishing knowledge of
> specific incidences of conduct by alleged victim Kim Holmes mainly
> in association with Steve Innocent, Phillipe Vickers, and Widzer
> Beauv[a]s demonstrating a history and pattern of violent and aggressive
> conduct both individually and as a group.

> (2)    The testimony of Kenyatta Florence attesting to his and Mr.
> Peoples'[s] knowledge of Holmes and his associates, association as a
> gang, threats of violence, violent conduct and the display and
> possession of weapons.

> (3)    The testimony of Morell Cook attesting to his familiarity with
> Holmes and his associates from Club Fuel (Cook was a promoter) and
> through his observations of Holmes and his associates['] violent
> conduct.

> (4)    Physical evidence by law enforcement and a website page
> (myspace.com) documenting a pattern and history of violent conduct
> by Holmes and his associates in Ybor City and documenting Holmes
> and his associates as gang members of the blood gang ["]sex, money,
> murder.["]

Mr. Peoples argues that, absent counsel's alleged ineffectiveness, "significant and

material" evidence of the victim's reputation could have been used to overcome the

State's motion *in limine*.

The state post-conviction court denied this ground of ineffective assistance of

counsel after an evidentiary hearing as follows (Doc. 21-2, Ex. 20, part 4, Final

Order Denying Motions for Post-Conviction Relief, pp. 3–9) (court's record

citations omitted):

Defendant alleges counsel was ineffective for failing to investigate, procure, and present evidence to support the admission of evidence regarding the victim's reputation for violence; evidence which was necessary to oppose the State's motion in limine and to support the defense of justifiable or excusable homicide at trial. Defendant alleges that counsel was ineffective for failing to investigate, procure, and present evidence through the testimony of (a) Defendant, (b) Kenyatta Florence, (c) Morrell Cook, as well as (d) physical evidence, which would have established the victim's, Kim Holmes (hereinafter "Holmes"), association with a gang and reputation for violence and Defendant's knowledge of such. Defendant asserts the State realized before trial that defense counsel was going to introduce testimony regarding the victim's reputation for violence and filed a motion in limine to prohibit such testimony because it was unsubstantiated and insufficiently specific to qualify as reputation evidence. Following a hearing, the trial court granted the State's motion and excluded all such evidence. Defendant asserts counsel failed to investigate and ascertain the necessary evidence to overcome the State's motion in limine.

a.  Ground 1(a) Defendant's testimony

Defendant asserts he would have testified to specific conduct by the victim and his associates, Steve Innocent, Phillipe Vickers, Widzer Beauvas, and Jovenal Myrbel. Defendant's testimony would have included the following:

   a)  In November 2005, while at Club Fuel in Ybor, Defendant observed victim Holmes and his friends Innocent, Vickers and Beauvas together in a group, flashing gang signs among themselves and other members of "Blood" affiliated gangs.

   b)  In December 2005, Defendant spoke to Morrell Cook, a producer at Club Fuel, and he informed Defendant that members of "Sex, Money, Murder" had been involved in a street fight which resulted in the arrest of Innocent and Vickers.

   c)  While at Club Fuel in April 2006, Defendant also observed Holmes, Innocent, Vickers, and Beauvas get involved in a

fight with 3-4 other people and then get ejected from the club. Defendant alleges Holmes and his associates threatened to kill the bouncers and return to the club to "shoot up everything."

d) On or about June 15, 2006, Defendant was manager and co-owner of a studio called "House of Hitz." He received a call from Kenyatta Florence, a studio employee, who advised him that during a recording session for "Sex, Money[,] Murder," Holmes and Innocent brought firearms to the studio so he terminated their recording session. Holmes and his associates then became aggressive and threatening towards Florence and threatened to "shoot this place up." Defendant further instructed Florence not to schedule anymore sessions for "Sex, Money[,] Murder."

e) In June 2006, after having been informed of the threat of violence against his studio, Defendant conducted an internet search of "Sex, Money[,] Murder" and found a MySpace page. He viewed photographs of Innocent, Vickers and Beauvas displaying Blood gang colors, apparel, signs associated with "Bloods" gang and handing assault weapons.

f) On or about August 2006, Defendant observed Holmes, Innocent, Vickers and Beauvas at Club Prana in Ybor, using gang signs among themselves and other Blood affiliated members. Defendant witnessed Vickers get into an altercation with another club patron and then saw Holmes, Innocent and Beauvas immediately encircle that person in an aggressive and threatening manner, and escort him to the exit of the club. At that point, they "bodily propelled the person into the street" and threatened to physically harm him if he returned.

g) On or about August 15, 2006, Defendant was at a home studio run by Anthony McFarland, where Holmes, Innocent, Vickers and Beauvas were participating in a recording session. Holmes and his associates displayed gang signs and used Blood terminology, and their lyrics

advocated extreme violence, assault and murder of persons who offended them or opposed their objectives. Upon conclusion of their recording session, Holmes and his associates glared at Defendant in a hostile manner and Vickers spoke hostile words to Defendant.

b. Ground 1(b) testimony of Kenyatta Florence

As to Kenyatta Florence, Defendant asserts that he was available to testify at both the motion in limine and at trial. Florence would have testified that on or about June 15, 2006, during a recording session scheduled at Defendant's studio for "Sex, Money, Murder," he observed Holmes and Innocent in possession of firearms, and ended their session. Upon having their session terminated, Holmes and his associates became aggressive and threatened to "shoot this place up." Florence called to advise Defendant of what had occurred, and Defendant advised him that "Sex, Money, Murder," i.e., Holmes and his associates, would no longer be permitted in the studio. Florence would have further testified that both he and Defendant were familiar with "Sex, Money, Murder," including Holmes and his associates, from at least 5-6 prior recording sessions at the studio and they regularly acted in a hostile and aggressive manner.

c. Ground 1(c) testimony of Morrell Cook

As to Morrell Cook, Defendant asserts he was available to testify at both the motion in limine and at trial, and would have testified that he was a promoter at Club Fuel from 2004 to 2006. Cook and Defendant had previously discussed "Sex, Money, Murder;" and Cook witnessed Holmes and his associates get ejected from the club in June, 2006 for fighting and they threatened to return to "shoot this place up." From his work at the club, Cook was aware that "Holmes and his associates frequently displayed violent and aggressive manners, commonly threatened violence against others, and regularly became in [sic] physical altercations with others."

d. Ground 1(d) physical evidence

As to physical evidence, Defendant asserts counsel was aware Holmes and his associates, specifically, Innocent, Vickers, and Beauvas were

known to be violent and aggressive, had been arrested in Ybor for such conduct, and were affiliated with the Blood gang "Sex, Money, Murder." Defendant provides numerous purported "Sex, Money, Murder" MySpace page photos, including photos of Holmes, Vickers, Beauvas, and Innocent displaying gang colors and signs, photos of money and automatic weapons, and photos of Innocent with assault weapons. Defendant also cites to numerous police reports describing the arrests of Holmes, Innocent, Vickers, and Beauvas for various offenses. Defendant alleges effective counsel would have investigated and obtained such evidence to establish the admissibility of the victim's reputation for violence.

Defendant argues that had counsel investigated and presented the above-described testimony and evidence, the Court would not have granted the State's motion in limine and such testimony would have been admissible at trial. Defendant argues such evidence would have contradicted the State's characterization of Holmes as an innocent, "defenseless little boy," and would have demonstrated to the jury that Holmes was actually a violent and aggressive man, and that Defendant reasonably and justifiably feared for his own safety. When he stabbed the victim, Defendant argues if such evidence of the victim's reputation for violence had been admitted at trial, it would have supported Defendant's theory of self-defense and the outcome of his trial would have been different.

At the evidentiary hearing Defendant's former counsel Antina Mobley (hereinafter "Mobley") testified she was aware of the victim's affiliation with the "Sex Money Murder" gang and the nickname "Killer" and that her trial strategy was to get such information in trial. However, Mobley testified the State filed a motion in limine to prohibit such information from being discussed at trial and despite her arguments against the State's motion, the judge ultimately granted the State's motion and did not allow most of the evidence about the victim's reputation in at trial. Mobley testified the judge ruled the rumors and information about victim's gang affiliations were too general and not specific enough, and the witnesses who had information or allegedly heard rumors of the victim's violent reputation could not specifically indicate that the victim was a participant in any gang.

Mobley testified she asked Defendant if he knew of anything about the victim and that Defendant told her he did not. Defendant explained he found out information about the victim and victim's gang after the fact but did not have specific information prior to the offense. Mobley testified Defendant never her told her about any of the specific acts set forth in claim one and she had never seen the police reports attached to the motion. Mobley testified even with the information as alleged by the Defendant in this claim, that she believes the State's motion in limine still would have been granted because she argued the victim's gang affiliation to the judge at the hearing but the judge held the information was not specific enough. Mobley testified she doesn't think the Myspace photos would have been admissible because the photos were mostly associates of the victim, not of the victim and the judge's findings in the motion in limine addressed the victim's reputation for violence. Mobley testified had Morrell Cook testified in the motion in limine, his testimony would not have been helpful, because he said he didn't know the victim and said the victim's friends were nice guys.

The Court's granting of the State's motion in limine meant the nickname "Killer" was not permitted to refer to the victim as "Killer" or the reference to Defendant as "Ex-con." Any and all references to [the] victim and/or his friends having a reputation for fighting to get kicked out of clubs was excluded; and all references to [the] victim as a "hot head" who carried a knife were excluded by the court's pretrial order on the State's motion in limine.

A review of the record reflects on May 16, 2008, the State and Defense both argued their respective motions in limine to the Court. Mobley argued against the State's motion regarding [the] victim's reputation and sought to admit evidence not only of the victim's gang affiliation but also his nickname "Killer" in at trial. The Court denied the defense's motions and granted the State's motion in limine and stated the defense's information was "too vague and there's no specificity to it."

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, and the record[,] the Court finds counsel's trial strategy and the record supports that counsel sought to introduce evidence of the victim's reputation at trial in opposition to the State's motion in limine but such requests were denied by the Court who granted the State's motion. First, the Court finds trial counsel's

testimony to be credible that she discussed with the defendant whether he had any prior knowledge of [the] victim's reputation for violence and that Defendant maintained he did not. Second, the evidence as alleged by Defendant in this claim would not have changed the outcome of the motion in limine hearing or trial given the court's ruling. With regard to Defendant's assertions that Morrell Cook would have testified regarding the violent nature of the victim, or that the Myspace photos of the victim's associates would have helped Defendant's case, the Court notes no evidence was provided at the evidentiary hearing to support such assertions, as the only testimony in support of Defendant's claims was from Defendant. Further, the Court finds trial counsel's testimony more credible than Defendant's on such assertions. For the foregoing reasons, no relief is warranted on ground 1(a), l(b), 1(c), and 1(d).

Trial counsel must decide which strategic and tactical option to pursue. A petitioner must overcome the presumption that counsel's conduct was a matter of strategy. *Strickland*, 466 U.S. at 689. Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler*, 218 F.3d at 1314; *see also Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.").

Mr. Peoples does not show that counsel's chosen trial strategy, viewed objectively, was patently unreasonable. *Dingle*, 480 F.3d at 1099; *see also Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir. 2008) ("[O]ther attorneys might have done more or less . . . or they might have made the strategic calls differently, but we cannot say that no reasonable attorney would have done as [counsel] did.").

Moreover, the AEDPA affords a presumption of correctness to a factual determination made by a state court. *See Jenkins v. Comm'r, Ala. Dep't of Corr*., 963 F.3d 1248, 1272 (11th Cir. 2020) ("The credibility of a witness is a question of fact entitled to a presumption of correctness under AEDPA."); *Consalvo v. Sec'y, Dep't of Corr*., 664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact.") (citation omitted). This deference applies to a credibility determination that resolves conflicting testimony. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the applicant's testimony."). The deference is heightened when reviewing a credibility determination in a Section 2254 application. *Gore v. Sec'y, Dep't of Corr*., 492 F.3d 1273, 1300 (11th Cir. 2007); *accord Kurtz v. Warden, Calhoun State Prison*, 541 F. App'x 927, 929 (11th Cir. 2013) ("'A certain amount of deference is always given to a trial court's credibility determinations' and a credibility determination in a case on habeas review receives heightened

45

deference.") (quoting *Gore*, 492 F.3d at 1300).  To be sure, "[f]ederal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016); *see also Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about the [witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Mr. Peoples does not rebut by clear and convincing evidence the presumption of correctness afforded the state court's credibility determination.  28 U.S.C. § 2254(e)(1).  Therefore, he does not establish that the state court's ruling was based on an unreasonable factual determination.  28 U.S.C. § 2254(d)(2).  Mr. Peoples fails to demonstrate that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.   Accordingly, Mr. Peoples is not entitled to federal habeas relief on Ground Six.

**Ground Seven**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not calling witnesses Tiffany Deak, Kristina Fox, Phillipe Vickers, and Joellen Welch "to credibly impeach the testimony and version of events portrayed by selective state witnesses Karen Lamb, Steve Innocent, and Shauntay Cummings and credibly support the asserted defense of self-defense," which resulted in a denial of

a fair trial, due process, and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments.  Mr. Peoples alleges that "[t]he testimony which could have been presented through Vickers, Deak, Fox, and Welch would likely have resulted in a different outcome of Defendant's trial" because the testimony "would have presented the jury with a credible version of an entirely different nature (i.e., that it was Defendant who was encircled by Holmes and at least two, and possibly three, of his associates and physical hostilities ignited suddenly and mutually among multiple combatants)."  (Doc. 1, p. 18).

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-2, Ex. 20, part 4, Final Order Denying Motions for Post-Conviction Relief, pp. 9–13) (court's record citations omitted):

> Defendant alleges ineffective assistance of counsel due to counsel's failure to call Phillippe Vickers, Tiffany Deak, Kristina Fox, and Joellen Welch, as defense witnesses at trial to credibly impeach the testimony and version of events established by the State's witnesses. Defendant asserts each of those persons were listed as State witnesses, but did not testify at trial, and they would have been more credible than defense's witnesses who did testify at trial. Defendant maintains each of these witnesses were available to testify at trial. Defendant alleges Vickers, Deak, Fox, and Welch would have testified the altercation was not just between the victim and Defendant, but that Defendant was confronted by the victim and three or four persons and the hostilities erupted suddenly and mutually amongst a group of four to six people who well outnumbered Defendant.
>
> a. Phillippe Vickers

Defendant alleges that Phillippe Vickers would have testified that Defendant and Holmes were arguing when he and Innocent physically attempted to intervene. Defendant asserts Vickers'[s] testimony would have demonstrated that when the "physical hostilities" began, it was Defendant against Holmes, Innocent, and Vickers, and that the physical altercation "ignited suddenly and mutually" among the group.

b. Tiffany Deak

Defendant asserts Tiffany Deak would have testified that Defendant walked towards her car alone, and then Holmes and his friends approached her vehicle and attempted to intervene in a discussion between the defendant and Shauntay Cummings. According to Defendant, Teak would have testified that Defendant and his friends, and Holmes and his friends, then "just all started running and hitting each other . . ." and the fight involved multiple people and progressed from the vehicle all the way over to the wall area.

c. Kristina Fox

Defendant asserts Kristina Fox would have testified Defendant approached the passenger side car window to talk to her when Shauntay Cummings exited the driver's side of the car and began to argue with Defendant. She would have testified that Holmes, Vickers, and Beauvas then rushed the defendant, who then pushed Holmes. Holmes pushed Defendant back and a fight "automatically happened." Defendant claims she would have testified that Vickers and Beauvas attempted to break up the fight, but it could have appeared to Defendant that they were trying to "jump" him. She would have testified that Defendant's friends then joined in and everyone was in a "rumble." Defendant also asserts that she would have testified that while Holmes and Vickers were fighting Defendant's friends, Defendant ran to his vehicle grabbed an object, then ran back over and stabbed Holmes two to three times.

d. Joellen Welch

Defendant claims Joellen Welch would have testified that Defendant was arguing with Shauntay Cummings when Holmes approached with three others and attempted to intervene. She further would have testified that she left the scene without speaking to police and did not speak to

law enforcement until a year after the incident. Welch would have testified that other listed State witnesses, Justina Fox and Kristina Fox never said anything to her about a knife in the days following the incident. Welch would have additionally testified that before she spoke with law enforcement, Justina and Kristina asked her to lie and say that she saw Defendant get a knife from his vehicle. Finally, Welch would have testified that she did not think that Defendant would have had time to get a knife from his vehicle.

Defendant asserts witnesses Vickers, Deak, Fox, and Welch were originally listed as State witnesses and since they were friends of victim Holmes, they would have been credible witnesses. Defendant asserts their testimony would have impeached the other State's witnesses who testified that Defendant attacked Holmes, and that Holmes'[s] friends became involved in the physical altercation only after [the] victim was stabbed. Defendant claims the testimony of Vickers, Deak, and Welch would have impeached the testimony of State witness Lamb, who testified that Defendant went to his car to retrieve a knife, and would have also refuted the State witnesses who refute his defense of self-defense. Defendant asserts the testimony of the witnesses would have convinced the jury that Defendant possessed a reasonable and justified fear for his safety and found his actions to be justified. Defendant alleges the testimony would have cast reasonable doubt in the minds of the jury as to Defendant's guilt. Defendant asserts that if counsel had called Vickers, Deak, Fox, and Welch as witnesses, the outcome of the proceedings would have been different.

At the evidentiary hearing, Mobley testified Defendant's fiance Christy Reed provided her with names of potential defense witnesses[,] that she followed up with the witnesses and called witnesses March, Stafford, and Turner at trial. Mobley testified the aforementioned witnesses listed in ground 2 would not have established Defendant was first confronted by the victim, Defendant was outnumbered, Defendant did not go to his car to get a weapon but rather, the defense witnesses she called at trial established each of those facts. Mobley further testified that [K]ristina Fox and Vickers would have contradicted Defendant's own allegations specifically that [K]ristina Fox would have testified she saw Defendant run back to his car and Vickers, who was a friend of the victim, would have testified Defendant was the aggressor and that he saw Defendant stabbing the victim.

"Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Further, the defendant carries the burden of overcoming the presumption that a decision might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *see also Asay v. State*, 769 So. 2d 974, 984 (Fla. 2000). "Counsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State*, 769 So.2d 990, 1001 (Fla. 2000).

An allegation of ineffective assistance of counsel for failure to call a witness will fail where the defendant does not present any supporting evidence at the evidentiary hearing from the witness who the defendant claims would have been helpful. *See State v. Hanania*, 715 So. 2d 984, 986 (Fla. 2d DCA 1998). The substance of such a witness'[s] testimony is a fact-based issue that requires development, and thus a defendant effectively waives his allegation by failing to present evidence when given the opportunity to do so. *See Ferrell v. State*, 918 So. 2d 163, 173 (Fla. 2005). Without the testimony of the witness at the evidentiary hearing, the record contains no evidence as to what the testimony would have been, and the defendant therefore cannot establish the prejudice prong of *Strickland*. *See Hanania*, 715 So. 2d at 986.

At the evidentiary hearing, Defendant presented no evidence of witnesses Phillippe Vickers, Tiffany Deak, Kristina Fox, and Joellen Welch testimony. As Defendant did not introduce any testimony of Phillippe Vickers, Tiffany Deak, Kristina Fox, and Joellen Welch at the evidentiary hearing, the Court finds ground 2 must be denied for Defendant's failure to set forth prejudice. *See Ferrell*, 918 So. 2d at 173; *Hanania*, 715 So. 2d at 986. Further, the Court finds counsel's decision to not call Phillippe Vickers, Tiffany Deak, Kristina Fox, and Joellen Welch who would not help Defendant's defense and to instead call the defense witnesses she choose to call at trial because their testimony would help Defendant's defense to be a reasonable trial strategy. *See Occhicone v. State*, 768 So. 2d at 1048. For the foregoing reasons, the Court finds no relief is warranted on ground 2(a), 2(b), 2(c) and 2(d).

Which witnesses to call, and when to call them, is the epitome of a strategic decision. *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (citation omitted); *see also Hardwick v. Crosby*, 320 F.3d 1127, 1161 (11th Cir. 2003) (holding that trial counsel's failure to call certain witnesses is generally considered a tactical decision, not ineffective assistance of counsel). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted).[7] "The mere fact that other witnesses might have been available . . . is not a sufficient ground to prove ineffectiveness of counsel." *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995). "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009).

Even assuming that trial counsel performed deficiently by not calling any of these witnesses, Mr. Peoples cannot obtain relief. He provides no evidence that any of the witnesses were both available and willing to testify on his behalf or that the witnesses would have testified as he hypothesizes. *See, e.g., Bray v. Quarterman*,

---

[7] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

265 F. App'x 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

Mr. Peoples fails to rebut the presumption that counsel reasonably and strategically chose to not call these witnesses.  He fails to support his claim with any actual testimony by the witnesses or affidavits.  *See Ashimi*, 932 F.2d at 650.  Mr. Peoples likewise does not establish that any of these witnesses' testimony would have been sufficient to cause the jury to reach a different verdict, in light of all the other evidence adduced at trial.  Absent a demonstration of prejudice, Mr. Peoples cannot prevail on this ground of ineffective assistance of trial counsel.  *Strickland*, 466 U.S. at 691–92.  Mr. Peoples fails to establish either that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Eleven**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not calling Phillipe Vickers to testify at trial "to elicit and establish that Defendant's bracelet, which had been broken during the altercation, was recovered by law enforcement from Vickers at the scene." (Doc. 1, p. 24). Mr. Peoples argues that this alleged error resulted in a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-2, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief, pp. 26–27) (court's record citation omitted):

> Defendant alleges counsel was ineffective for counsel's failure to call Phillippe Vickers at trial . . . to testify, as he did at deposition, that he was apprehended at the scene of the altercation with the . . . broken bracelet in his hand. Defendant asserts the failure to call Vickers permitted the State to suggest the bracelet recovered at the hospital could have belonged to Holmes. Defendant argues the issue of the bracelet's true ownership was clouded, and thereby further allowed the State to undermine part of Defendant's self-defense theory. Defendant asserts, but for counsel's errors the evidence would have supported his claim of self-defense and the outcome of the trial would have been different.
>
> . . . .
>
> At the evidentiary hearing, Defendant presented no evidence of witness Phillippe Vickers['s] testimony. The Court finds Defendant did not introduce any testimony of Phillippe Vickers at the evidentiary hearing and thus, [this] ground . . . must be denied for Defendant's failure to set

forth prejudice. *See Ferrell*, 918 So. 2d at 173; *Hanania*, 715 So. 2d at 986. Further, Mobley testified she made a tactical decision to not call Vickers at trial because

> "He was not a favorable witness to the Defense for reasons I previously stated earlier this morning, but also Mr. Vickers says that he actually found the bracelet and picked it up off the ground after the fact and gave it to the police officer which I didn't like that statement anyway because I liked it better that it was found in Mr. Holmes's property. And that, that was the implication that they took it actually during the offense and that's how Mr. Holmes ended up with it as opposed to Mr. Vickers trying to or saying— testifying that he picked it up on the ground after the fact and didn't know where it came from. Because Mr. Vickers'[s] testimony was going to be that there was no robbery and he just happened to find the bracelet on the ground after the fact."

"Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). The Court finds counsel's decision to not call Vickers to testify was a reasonable strategic decision that the Court will not second guess. *See id.* For the foregoing reasons, no relief is warranted on [this] ground . . . .

Mr. Peoples cannot obtain relief because he provides no evidence that Vickers was both available and willing to testify on his behalf or that Vickers would have testified as he suggests.  *See Bray*, 265 F. App'x at 298; *Ashimi*, 932 F.2d at 650. Mr. Peoples fails to rebut the presumption that counsel reasonably and strategically chose to not call Vickers.  He fails to establish either that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Thirteen**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not investigating, interviewing, or calling as a witness at trial Officer T. Pasley "who would have verified and confirmed the version of events according to Vickers, Deak, Fox, and Welch while impeaching the version of events claimed and testified to by Lamb, Cummings, and Innocent."  (Doc. 1, p. 28).  Mr. Peoples argues that this alleged error resulted in a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-3, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief , pp. 28–29) (court's record citations omitted):

> Defendant alleges ineffective assistance of counsel where counsel failed to investigate, interview, and call as a witness, Officer T. Pasley, who was available to testify and would have confirmed the version of events according to witnesses Vickers, Deak, Fox, and Welch, and impeached that of Lamb, Cummings, and Innocent. Defendant asserts Officer Pasley may have witnessed the entire altercation because witness Karen Lamb testified at deposition that a mounted patrol officer was within visual range of the incident and was watching the entire episode. Additionally, Officer Braxton Baird reported that he received a call from Mounted Patrol Officer Pasley, who reported a large fight in the parking lot behind Club Empire. Officer Baird reported that when he arrived at the scene, he observed three black males fighting and running toward a dark SUV; Defendant claims Baird's observations would have been immediately after Holmes was stabbed. Defendant claims Officer Pasley's testimony would have corroborated that of Vickers, Deak, Fox, and Welch that a fight broke out between a group

of four to six combatants, Defendant was outnumbered by Holmes and his associates, and that Holmes was stabbed as the fight progressed from the vehicle to the wall area. Defendant alleges Officer Pasley's testimony would have contradicted State witnesses Lamb, Cummings, and Innocent, who each testified Defendant was alone in assaulting and battering Holmes and none of Holmes'[s] friends intervened until after victim Holmes had been beaten and stabbed. Defendant asserts but for counsel's failure the outcome of the trial would have been different.

. . . .

At the evidentiary hearing, Defendant presented no evidence of Officer T. Pasley['s] testimony. The Court finds Defendant did not introduce any testimony of Officer T. Pasley at the evidentiary hearing and thus, [this] ground . . . must be denied for Defendant's failure to set forth prejudice. *See Ferrell*, 918 So. 2d at 173; *Hanania*, 715 So. 2d at 986. Further, at the evidentiary hearing Mobley testified that Officer Pasley was a mounted police officer in the parking lot where the offense occurred, he saw a large group of people, he did not make a police report, and there was no indication he saw the altercation. Mobley testified from her review of the reports there was no indication that he could give any favorable testimony to the Defendant. "Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). The Court finds counsel's decision to not call Officer T. Pasley to testify who did not view the altercation and could offer no support to aid Defendant's defense was a reasonable strategic decision that the Court will not second guess. *See id*. For the foregoing reasons, no relief is warranted on [this] ground . . . .

Mr. Peoples cannot obtain relief because he provides no evidence that Officer

Pasley was both available and willing to testify on his behalf or that Officer Pasley

would have testified as he suggests.  *See Bray*, 265 F. App'x at 298; *Ashimi*, 932

F.2d at 650.  Mr. Peoples fails to rebut the presumption that counsel reasonably and

strategically chose to not call Officer Pasley.  He fails to establish either that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

## Ground Ten

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not introducing "available evidence to conclusively establish Defendant's ownership of the bracelet that had been broken at the scene and recovered from Holmes or one of his associates in support of Defendant's asserted defense of self-defense." (Doc. 1 at 23)   Mr. Peoples argues that counsel failed to have him produce certain photographs of himself wearing three bracelets, which evidence he claims "would have precluded the State from contesting or clouding the issue of ownership of the broken bracelet in that such conclusively established Defendant to have owned the broken bracelet."  (Id.).

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-2, Ex. 20, parts 4 and 5, Final Order Denying Motions for Post-Conviction Relief at 24–26) (court's record citations omitted):

> Defendant alleges ineffective assistance of counsel where counsel failed to introduce available evidence to conclusively establish Defendant's ownership of a bracelet that was broken at the scene and recovered from victim Holmes or one his associates. Defendant asserts the broken bracelet was crucial in supporting [his] self-defense claim. Defendant claims defense counsel placed significant emphasis on the

broken bracelet found in [the] victim's possession as proof that Defendant was robbed. Defendant argues that counsel introduced—through defense witness Demetrius Johnson—only a single photograph that showed Defendant wearing two bracelets. Counsel also elicited Johnson's opinion that the bracelet depicted in the State's trial exhibit P43 photograph was, in fact, Defendant's bracelet. Defendant asserts the State argued the defense trial exhibit 10 photograph did not depict Defendant's bracelet and additionally introduced a photograph of Defendant's jail property receipts which listed two bracelets; the State then argued that the photographs in the defense's trial exhibit 10 actually depict the two bracelets placed into the Defendant's property after his arrest. The State further elicited testimony from one of the detectives that the broken bracelet may have belonged to Holmes. Defendant acknowledges that he provided defense counsel the photograph, which was trial exhibit 10, but claims that counsel failed to advise him that, during a sidebar conference, the State disputed that the defense trial exhibit 10 photograph depicted the same broken bracelet that was found in the victim's possession. Defendant claims if counsel had advised him that the State was challenging this matter, he would have offered additional photographs which show the Defendant wearing three bracelets—the two bracelets in his property at the jail, as well as the broken bracelet found in the victim's possession. Defendant claims he advised counsel prior to trial that he had additional photographs that proved he had three bracelets, but counsel advised him that the photograph depicting him wearing just two bracelets was "good enough." Defendant asserts counsel failed to realize the significance of the defense photograph and, but for counsel's errors, the evidence would have supported his claim of self-defense and the outcome of the trial would have been different.

At the evidentiary hearing, Mobley testified Defendant's bracelet ended up in the victim's property at the hospital and since Defendant was never transported to the hospital, she argued the victim must have taken Defendant's bracelet. Mobley testified she established the bracelet was in the victim's property and admitted photographs as defense trial exhibit 10 through defense witness Johnson showing Defendant wearing the same bracelet prior to the date of offense. Mobley testified the fact that Defendant's bracelet was found in [the] victim's possession was favorable to the defense and that the additional photographs which are the subject of this claim were unnecessary, stating "the evidence

was undisputed based on Mr. Johnson's testimony that the State could not refute that the bracelet belonged to Mr. Peoples and since Mr. Peoples didn't go to the hospital, the implication was that Mr. Holmes or some of his friends actually took the bracelet from Mr. Peoples during the robbery."

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, and the record the Court finds counsel sufficiently argued as her trial strategy [of] self-defense to a robbery[,] highlighting the fact that the Defendant's bracelet was found in [the] victim's property at the hospital. The Court finds further photos of the Defendant's bracelets were not necessary as counsel had already established Defendant's bracelet was found in [the] victim's possession through witness Johnson and separately through testimony of law enforcement, and thus, finds Defendant cannot establish sufficient prejudice in counsel's failure to present this evidence. As such, no relief is warranted on [this] ground . . . .

Mr. Peoples fails to show a reasonable probability exists of a different outcome at trial if counsel had introduced the additional photographs as he suggests. Neither disagreement with counsel's trial strategy nor a persuasive argument that a different strategy may have been the better choice overcomes the strong presumption that counsel's strategy was reasonable. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ."). Mr. Peoples does not show that counsel's strategy, viewed objectively, was so "patently unreasonable that no competent attorney would have chosen it." *Dingle*, 480 F.3d at 1099. Mr. Peoples fails to meet his burden of proving that the state court either unreasonably applied controlling

Supreme Court precedent or unreasonably determined the facts by rejecting this ground.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Twelve**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not effectively cross-examining Officer Colin McCoy or calling Officer McCoy as a defense witness "to elicit that Defendant had, almost immediately following the altercation, told law enforcement he had been 'jumped by five guys' (as necessary and warranted to counter the State's evidence and repeatedly emphasized argument that Defendant never, within hours of the altercation, said anything about being attacked)."  (Doc. 1 at 26).  Mr. Peoples argues that counsel's failure to introduce this "highly favorable evidence was prejudicial to Defendant's defense where the State repeatedly . . . claimed this to be the 'most important piece of evidence' of why the jury should reject Defendant's claim of self-defense."  (Id. at 27).

The state post-conviction court summarily denied this ground of ineffective assistance of counsel as follows (Doc. 21-3, Ex. 20, part 4, Order Granting In Part, Reserving Ruling In Part, and Denying In Part Motion for Post-Conviction Relief at 2–3):

> Defendant alleges counsel was ineffective because counsel failed to effectively cross-examine State's witness Officer Colin McCoy or, alternatively, call him as a defense rebuttal witness. Defendant asserts Officer McCoy was available and would have testified that shortly after the altercation and while Defendant was being transported from the scene the Defendant said, "This is bullshit. Five guys jumped me and

60

no one wants to hear my side of the story." Defendant asserts that if counsel had shown the State's argument to be false and precluded the State from attacking the veracity of the Defendant's self-defense theory, there is a reasonable probability the trial would have resulted in a different outcome.

The State argues Defendant's statement is a self-serving statement and inadmissible hearsay. The State contends Defendant's counsel was not deficient because counsel had no legal basis to introduce the statement.

The Court finds Defendant's statement which Officer McCoy would have testified to is inadmissible hearsay. *See Schreiber v. State*, 973 So. 2d 1265, 1270 (Fla. 2d DCA 2008) (finding defendant's exculpatory self-serving statement to detective elicited on cross-examination was hearsay and not within hearsay exception for admissions offered against a party); *Whitfield v. State*, 933 So. 2d 1245, 1248 (Fla. 1st DCA 2006) (finding defendant's out-of-court self-serving exculpatory statements are inadmissible hearsay); *Barber v. State*, 576 So. 2d 825, 830 (Fla. 1st DCA 1991) ("When a defendant seeks to introduce his own prior self-serving statement for the truth of the matter stated, it is hearsay and it is not admissible."). The Court finds counsel was not deficient for failing to introduce this statement or cross-examine Officer McCoy as to this statement, as such statement is inadmissible. As such, no relief is warranted on [this] ground . . . .

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (explaining that "[s]tate courts are the ultimate expositors of state law," and federal courts must abide by their rulings on matters of state law) (citations and footnote omitted). "Although an ineffective assistance of counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's

construction of its own law.'" *Will v. Sec'y, Dep't of Corr*., 278 F. App'x 902, 908 (11th Cir. 2008); *see also Herring v. Sec'y, Dep't of Corr*., 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [the petitioner's counsel] done what [the petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

The basis for Mr. Peoples's ground of ineffective assistance of trial counsel is counsel's failure to object under state evidentiary rules to the admissibility of Officer McCoy's trial testimony.  The state post-conviction court in rejecting Mr. Peoples's ground of ineffective assistance of counsel has answered the question of what would have happened if counsel had objected to the testimony on hearsay grounds as Mr. Peoples suggests.  (Doc. 21-3, Ex. 20, part 4, Order Granting In Part, Reserving Ruling In Part, and Denying In Part Motion for Post-Conviction Relief at 2–3).  The state court's interpretation of state law is afforded deference.  *See Will*, 278 F. App'x at 908.  Mr. Peoples fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Fourteen**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not effectively cross-examining Shauntay Cummings to discredit her motive for testifying.  Mr. Peoples alleges that "Cummings'[s] real motive in testifying was because she had been threatened by Judge Sleet to appear and 'cooperate' or she would go to jail."  (Doc. 1 at 30).  He further alleges that Cummings's "reluctance to testify was furthermore inconsistent with a claim she was testifying because it was 'the right thing to do.'"  (Id.).  Mr. Peoples argues that this alleged error resulted in a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-3, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief at 29–31) (court's record citations omitted):

> Defendant alleges counsel was ineffective in failing to effectively cross-examine State witness Shauntay Cummings in order to discredit her claimed motive for testifying. Defendant asserts that Cummings testified in trial that she was testifying because it was the right thing to do. Defendant argues Cummings was really testifying because Judge Sleet had advised her that if she did not appear for trial or if she refused to cooperate, she could be held in contempt of court and jailed.[8] Defendant asserts that if counsel had discredited her motive for testifying, it would have cast doubt on her veracity. Defendant alleges

---

[8]  During the trial the prosecutor advised the trial judge that she had to have her investigator go to Cummings's place of employment and bring her to court because Cummings did not comply with a subpoena. (Doc. 19-2, Ex. 3, trial transcript, p. 241). The trial judge advised Cummings that she was under subpoena and that if she refused to cooperate she would be put in jail. (Id., p. 243).

counsel's failure to effectively cross-examine Cummings bolstered the credibility of the State's case by permitting Cummings to appear credible because she failed to establish her true motive for testifying. Defendant alleges prejudice and but for counsel's deficient performance, a reasonable probability exists the outcome of his trial would have been different.

At the evidentiary hearing, Defendant's former counsel Mobley testified Cummings told the State she did not want to come back to court after the first day of trial, so the State asked the judge to order her to return to court because she was a witness under subpoena. Counsel testified she did cross-examine Cummings regarding that she was subpoenaed to be in court and was also being prosecuted by the same state attorney's office as the Defendant "to indicate that she was here on her own motivation trying to better whatever outcome in her case would be." Mobley acknowledged she never questioned Cummings on the judge's instructions to return to court because she

> "thought that I had gotten out what I needed to get from her, that she was under subpoena, that she had her own charges pending and that she was hopefully trying to gain favor from the State Attorney's Office. I didn't think it necessary to bring that out. I mean, I guess I could have asked a question, but I, I don't think it would have made much difference in that respect."

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, and the record the Court finds the record reflects counsel effectively cross-examined Shauntay Cummings concerning her motivation to testify, that she was under subpoena and had her own pending case at the State Attorney's Office. Further, the Court finds counsel's decision to question Cummings about her motivation to testify in the manner she did was reasonable strategic decision. *Johnson*, 769 So. 2d at 1001. For the forgoing reasons, no relief is warranted on [this] ground . . . .

Counsel's decision to cross-examine a witness and the manner of cross-examination are strategic decisions entitled to deference. *Dorsey v. Chapman*,

262 F.3d 1181, 1185–86 (11th Cir. 2001).  Counsel's decision about how or whether to cross-examine a witness constitutes ineffective assistance "only if it was so patently unreasonable that no competent attorney would have chosen it."  *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987); *see also White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).

The prosecutor inquired of Cummings during both direct examination and redirect examination about her own pending case and asked whether any prosecutor had promised or offered her anything in exchange for her testimony in Mr. Peoples's case.  (Doc. 19-2, Ex. 4, trial transcript, pp. 279, 307).  Cummings advised that she had not received any offers or promises and that she was testifying "[b]ecause it's the right thing to do."  (Id., pp. 79, 308).  On cross-examination trial counsel elicited from Cummings that her pending case involved a drug charge that was also being prosecuted by the same prosecutor's office in Hillsborough County.  (Id., p. 300).

Mr. Peoples fails to show that the post-conviction court's deferring to trial counsel's reasonable trial strategy is an objectively unreasonable application of *Strickland*.  *See Minton v. Sec'y, Dep't of Corr*., 271 F. App'x 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).  Mr. Peoples fails

to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Eight**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by failing to "effectively advise Defendant on the decision of whether to testify at trial causing Defendant to unintelligently and unknowingly waive his right to testify in his own behalf at trial," resulting in a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.  (Doc. 1, p. 19).  Mr. Peoples alleges that counsel advised him to not testify because the witnesses "said everything necessary to establish his defense of self-defense" and that the State would try to "dig in" to his past if he testified.  (Id., pp. 19–20).  Mr. Peoples further alleges that counsel failed to inform him of the "extremely important strategic factor that evidence of Holmes'[s] reputation . . . would be admissible through Defendant's own testimony."  (Id., p. 20).

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-2, Ex. 20, part 4, Final Order Denying Motions for Post-Conviction Relief, pp. 13–17) (court's record citations omitted):

> Defendant alleges ineffective assistance of counsel for counsel's failure to effectively advise Defendant on the decision of whether to testify at

66

trial, causing Defendant to unintelligently and unknowingly waive his right to testify on his own behalf. Defendant alleges the contents of his proposed testimony in which he would have explained the events and argued self-defense. Defendant asserts that counsel advised him he should not testify at trial because the defense witnesses had already testified to "'everything necessary' to establish his defense of self-defense" and if he did, the State would bring up his past. Defendant claims he told counsel that he thought the State could only ask him the number of prior convictions, but counsel advised him the State would still try to "dig into it" if he testified. Defendant asserts counsel misadvised him as to both her assertion that the witnesses had testified to everything necessary to present his theory of self-defense, and that the State could "dig into" his past (i.e. nature of the convictions) if he testified. Defendant alleges counsel failed to inform him of the extremely important strategic factor that evidence of Holmes's reputation would be admissible through Defendant's own testimony. Defendant further asserts counsel was "grossly deficient" for failing to advise him that his testimony was of critical strategic importance in establishing his defense of self-defense but also the victim's reputation for violence. Defendant asserts he would have testified and such testimony would have established he acted in self-defense and was aware of [the] victim's reputation of violence.

Defendant asserts that counsel never discussed with him his right to testify until trial and then only after all of the witnesses had testified; at that time, counsel told him only that she did not think it was a good idea for him to testify and that "everything had been said already." Defendant alleges he did not have sufficient time to properly reflect and analyze his decision to not testify and his counsel was ineffective for not addressing this with him before trial began. Defendant claims counsel failed to advise him that most, if not all, cases involving self-defense were unsuccessful if the defendant did not testify. Defendant asserts he would have exercised his constitutional right to testify and provided a detailed account of what his testimony would have been but for counsel's misadvice. Defendant asserts that if he had testified, the jury would have concluded that his actions were justified and he would have been acquitted.

At the evidentiary hearing Mobley testified she advised Defendant the self-defense theory would be presented through the listed defense

witnesses, but that Defendant could decide to testify in his defense. Mobley testified she did not encourage or discourage Defendant to testify and advised the decision was solely his decision. Mobley testified she advised Defendant if he testified

> "that the State would mention that he had priors, the number, not the actual underlying facts or the type. He could tell his version of the events. We could also get corroborating evidence from the other witnesses. If there was anything that he needed to put in that he wanted to say."

Mobley testified in addition to Defendant admitting to three felonies, that she was also concerned if Defendant testified his jail calls to his then girlfriend would be brought up and in one jail call there was indication that he paid his witnesses for testimony and that she explained the concerns with the admissibility of those calls if Defendant testified. The State played two of the defendant's jail calls at the evidentiary hearing wherein the Defendant made statements which would have been in conflict with the defense's theory that a robbery had occurred; the calls were not permitted in trial. Mobley testified depending on Defendant's testimony, the jail calls could have been introduced during his cross examination at trial.

Mobley testified [that] during trial prior to [the] court's colloquy with the Defendant concerning his right to testify that she discussed the evidence with the Defendant, reviewed everyone's testimony, and asked if there was anything he wanted or needed to add to the defense's case. Mobley testified Defendant "wasn't necessarily gung-ho about testifying," but that she prepared and reviewed direct examination questions with the Defendant if he chose to testify. Counsel for Defendant stated those questions were related to his version of the events, how he tried to protect himself, and about his jewelry that was taken by the victim.

Mobley testified she established Defendant's claim of self-defense without Defendant's testimony through testimony of Defendant's friend DJ Johnson and bystanders[,] some of whom didn't know the Defendant. Michael March, Sierra Stafford, and Janika Turner were present throughout the offense and testified. Mobley testified the

defense witnesses established self-defense by indicating Defendant was outnumbered, was attacked, heard someone say get his chains right before [the] victim snatched Defendant's jewelry, he was balled up being kicked, and that the evidence was sufficient to get the self-defense jury instruction.

The State admitted a letter from Defendant to Mobley that he wrote the day after trial in which he thanked Mobley for getting his side of the story to be heard without having to testify.

At the evidentiary hearing, Defendant testified that he had short conversations with defense counsel Mobley, and that Mobley expressed concern about his testifying in light of his criminal background and all of the potentially damaging jail calls he made, which she didn't have time to review. Specifically, Defendant testified as to what Mobley told him regarding his choice to testify at trial:

> "And basically she told me—she ultimately told me it was my decision, but she led me to believe that Demetrius Johnson and everyone else had said everything necessary to prevent—to present my defense. So ultimately I went with my counsel. I was going with my counsel. She said I don't need to testify, so I didn't testify."

Defendant further testified that based on his understanding of the law now, and his realization that it was necessary for him to testify to substantiate his self-defense claim, he would have testified.

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, and the record the Court finds Mobley's testimony to be more credible than the Defendant. The Court finds Mobley adequately advised Defendant of the pros and cons of testifying, including that a number of his prior felony convictions and potentially damaging jail calls could be admitted should he testify. The Court finds Mobley advised Defendant how self-defense had been sufficiently established through defense witnesses. The Court finds Defendant's decision to not testify was made knowingly, intelligently, and voluntarily. As such, no relief is warranted . . . .

Mr. Peoples fails to overcome with clear and convincing evidence the presumption of correctness afforded the state post-conviction court's factual determination that counsel properly advised him about his right to testify and that he knowingly and voluntarily chose not to testify on his own behalf. *See* 28 U.S.C. § 2254(e)(1). Mr. Peoples also fails to show that absent counsel's alleged error, a reasonable probability exists that the jury would have acquitted him. Absent a demonstration of prejudice, Mr. Peoples cannot establish his claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691–92. Accordingly, Mr. Peoples fails to meet his burden of proving that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Sixteen**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by (1) not objecting to the State eliciting allegedly "improper bolstering testimony" and (2) not objecting to the prosecutor's allegedly improper comments during closing argument. Specifically, Mr. Peoples argues the following:

> During the direct examination of State witness Karen Lamb the State elicited that when the police finally converged on the scene of the altercation everyone was cuffed. From state witness Shauntay Cummings the State elicited that while she was initially cuffed, the cuffs were eventually taken off and she was permitted to go about her business. Through Officer Thomas Farrell the State then proceeded to elicit that while Steve Innocent was initially taken into custody, "th[r]ough the investigation and interviews" the "handcuffs [were]

70

taken off." From Detective Brett Holder the State repeatedly elicited that Defendant had been taken into custody" and jailed.

(Doc. 1, p. 33).  Mr. Peoples alleges that the "net effect" of this testimony was that the police had determined "the State witnesses to be innocent and not guilty of any misconduct while the Defendant was guilty."  (Id., pp. 33–34).  Mr. Peoples asserts that the allegedly improper testimony was "doubly prejudicial" when considered along with the following statements by the prosecutor in closing argument (Doc. 1, p. 34):

> 1. "And we know that's true because Officer Farrell testified during the trial."
>
> 2. "You can't see them, Detective Holder said didn't [*sic*] have them."
>
> 3. "Maurice Bowen, no injuries and during Detective Holder's investigation this man wasn't involved in a fight at all."
>
> 4. "So to say that the injuries on Mr. Peoples is bruising, that would have been documented by the Detective. He's out there trying to figure out what happened that night, trying to get to the bottom of it. If there is injuries on there he would have testified to that and told you that."
>
> 5. "But we know that's true because the officer[s] testify that that's what happened."

Mr. Peoples argues that counsel's failure to object to the cited testimony and remarks in the closing argument resulted in a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-3, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief at 34–37) (court's record citations omitted) (emphasis in original):

> Defendant alleges counsel was ineffective for failing to object to the State's improper bolstering and vouching testimony and argument. Defendant asserts that the State elicited testimony from several witnesses that Shauntay Cummings and Steve Innocent were initially detained and handcuffed, but later released, while Defendant was taken into custody, handcuffed, and jailed. Defendant asserts that this bolstered testimony showed that law enforcement had bias in their conclusion that the State's witnesses were innocent of any misconduct, while Defendant was guilty. Defendant asserts such testimony was "doubly prejudicial" where the State argued during closing statements that any testimony by an officer was the truth, i.e., "And we know that's true because Officer Farrell testified during the trial." Defendant alleges the improper bolstering and vouching testimony and arguments lead the jury to give undue credibility to the State's case and witnesses and to doubt the defense. Defendant alleges he was prejudiced because counsel failed to make timely objections, and this information was considered by the jury and adversely affected the outcome of the trial. Defendant maintains but for this deficient performance, a reasonable probability exists the outcome of his trial would have been different.
>
> At the evidentiary hearing, Mobley testified she did cross examine witnesses that Cummings was detained and handcuffed during the investigation, but on redirect, the State established once the investigation was over Cummings was uncuffed. Mobley testified she did not believe anything was improper with the testimony because it was factually correct, and the State was clarifying the facts. Mobley testified she would not have objected to the fact that Steve Innocent was cuffed initially then uncuffed later because it was factually correct. Mobley testified she would not have objected to the statement that "we know that's true because Officer Farrell" and "that's true because the officers testified" because the prosecutor was only repeating the testimony that had come out at trial. Mobley testified she would not

have objected to the statement "you can't see them" and "Bowen, no injuries" concerning the officers viewing a lack of injuries on the Defendant and his friends because the State was only repeating the evidence that was presented during trial. Mobley testified she would not have objected to statement "if there's injuries he would have told you" because she believed it was a proper comment on the evidence. Mobley testified she would not have objected to improper bolstering or vouching to any of the complained upon statements. In closing arguments, the statements made by the State, which Defendant alleges were improper bolstering, were as follows:

> "That point in time the cops come. They take him down. Now, I know Ms. Mobley was asking during cross-examination about the back of Mr. Innocent's shirt. I'm not sure if I have a picture of that or not, asking him, "Is this the footprint? Is this dirt on your back?" You know what, he was taken down by the police. The footprint could have come from the police. I mean, he was being aggressive. He admitted to you that he was pulling Mr. Peoples out of the car when the police came. The police couldn't subdue him. *And we know that's true because Officer Farrell testified during the trial.*

> And he told you when he came on scene that the first thing he noticed is the group of guys at the SUV and he runs over there and is trying to take Mr. Innocent into custody while Mr. Peoples was in the driver's seat and that he personally saw Steve kicking at the door, punching Peoples and trying to remove Peoples from the car."

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, and the record the Court finds the complained upon statements and testimony were not improper and thus, finds counsel was not ineffective in failing to make a meritless objection. Defense counsel "cannot be deemed ineffective for failing to make a meritless objection." *Hitchcock v. State*, 991 So.2d 337, 361 (Fla. 2008). While it is improper for the state to vouch for the credibility of a police officer by arguing that the jury should believe police officers solely because they are police officers, . . . [the] prohibition against vouching does not forbid prosecutors from arguing credibility of

witnesses. *See Johnson v. State*, 801 So. 2d 141, 142–43 (Fla. 4th DCA 2001). The Court finds the testimony cited to by Defendant in his Motion does not rise to the level of improper bolstering and vouching. [The] [p]rosecutor's statements of "we know that's true because" simply refer back to previous testimony presented at trial, thus showing facts already in evidence. Further, the Court finds counsel's decision to not object to the statements subject of this ground because she believed the statements were factually correct to be a reasonable strategic decision. *Johnson*, 769 So. 2d at 1001. For the forgoing reasons, no relief is warranted on [this] ground . . . .

a. <u>Vouching and Improper Bolstering</u>

"Ordinarily, it is improper for a prosecutor to bolster a witness's testimony by vouching for that witness's credibility." *United States v. Sosa*, 777 F.3d 1279, 1295 (11th Cir. 2015) (quoting *United States v. Bernal–Benitez*, 594 F.3d 1303, 1313 (11th Cir. 2010)). "It is improper for the prosecution to place the prestige of the government behind a witness by making explicit personal assurances of the witness's veracity or by indicating that information not presented to the jury supports the testimony." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991). A prosecutor may, however, argue credibility and argue that a fair inference from the facts presented is that a witness had no reason to lie. *Hernandez*, 921 F.2d at 1573; *see also United States v. Maradiaga*, 987 F.3d 1315, 1327 (11th Cir. 2021) ("The rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case.") (citing *United States v. Sosa*, 777 F.3d 1279, 1295 (11th Cir. 2015)). Improper vouching requires a determination that the jury reasonably believed "the

prosecutor was indicating a personal belief in the witness' credibility . . . .". *Hong v. Sec'y Dep't of Corr.*, 478 F. App'x 648, 650–651 (11th Cir. 2012) (citing *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009)).

Mr. Peoples fails to show that any of the challenged testimony amounts to improper bolstering.  None of the witnesses made statements about other witnesses' credibility.  Mr. Peoples does not establish that the witnesses' testimony about being handcuffed collectively created a "net effect" of the witnesses' innocence of any crime or that the police had determined Mr. Peoples's guilt.  Moreover, trial counsel cross-examined each of the witnesses and the trial judge instructed the jury to consider each witness's credibility based on their individual knowledge and ability to observe the events about which each testified.  (Doc. 19-3, Ex. 7, trial transcript, pp. 886–87).  Accordingly, trial counsel had no basis to object as Mr. Peoples suggests.

b. Prosecutorial misconduct in closing argument

Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence."  *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir.1984).  While he may not go beyond the evidence presented to the jury, a prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence.  *United States v. Johns*, 734 F.2d 657, 663

(11th Cir. 1984).  To establish that counsel rendered ineffective assistance by not objecting to the prosecutor's allegedly improper closing argument, Mr. Peoples must show that the challenged conduct was both improper and prejudiced his substantial rights.  *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995).  An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair.  "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." *United States v. Hunte*, 559 F. App'x 825, 833 (11th Cir. 2014) (citing *Johnson v. United States*, 520 U.S. 461, 469–70 (1997)).

The state trial court judge properly instructed the jury before closing arguments began that the attorneys' arguments were not evidence.  (Doc. 19–3, Ex. 6, p. 803).  Mr. Peoples's fails to show that any of the challenged remarks amount to an explicit, personal guarantee of any witness's credibility or are otherwise improper.  Taken in the context of the entire trial, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor

infected the trial with such unfairness that the resulting conviction amounts to a denial of due process. *See Darden*, 477 U.S. at 181.  Mr. Peoples fails to meet his burden of proving that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Seventeen**

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not objecting and moving for a new trial based on allegedly improper statements in the prosecutor's closing argument "both individually and as to their overall cumulative impact."  (Doc. 1, p. 35).   In his federal petition Mr. Peoples cites numerous excerpts of the prosecutor's closing argument that he asserts either (1) improperly vouched for the credibility of the State's witnesses and the State's case, (2) impermissibly elicited sympathy for the victim, (3) misstated the law and mislead the jury, (4) shifted the burden of proof, or (5) commented on his right to remain silent and his failure to testify or present evidence.  (Doc. 1, pp. 35–36).  The state post-conviction court's order summarizes the challenged portions of the closing argument and denied relief on this ground of ineffective assistance of counsel as follows  (Doc. 21-2, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief, pp. 37–43) (footnote omitted):

> Defendant alleges counsel was ineffective in failing to object to improper closing arguments by the State including: (a) vouching for the

credibility of its witnesses and case, (b) impermissible victim sympathy and duty to convict, (c) misstating/ misleading the jury on law, and (d) shifting the burden of proof/commenting on Defendant's silence and failure to testify or present evidence. Defendant claims if counsel had objected the jury would not have been improperly influenced or a new trial would have been required, and the outcome of the proceedings would have been different.

a. []Vouching for Credibility of State's Witnesses and Case

Defendant alleges counsel should have objected to the following improper statements made by prosecutor in closing arguments:

1. "[S]teve Innocent tells you—he's honest with you, . . . (Trial Transcripts, May 22, 2008, p. 814 ).

2. "And we know that's true because Officer Farrell testified during the trial." (Trial Transcripts, May 22, 2008, p. 816).

3. ". . . .if Shauntay is—was going to come in here and make up and elaborate on what happened that night, don't you think she would have told you, 'I saw the knife. I personally saw Mr. Peoples with the knife. And I personally saw Mr. Peoples with a knife in his hand stabbing the victim?' She never says that." (Trial Transcripts, May 22, 2008, pp. 816–17).

4. "[Steve Innocent] was being honest with you about what happened that night . . . He's not trying to hide anything from you. If he was really lying why would he make his own buddy that died look bad that night." (Trial Transcripts, May 22, 2008, p. 817)

5. "So to say that the injuries on Mr. Peoples is bruises that would have been documented by the Detective. [He]'s out there trying the figure out what happened that night, trying to get to the bottom of it. If there is injuries on there he would have testified to that and told you that." (Trial Transcripts, May 22, 2008, p. 858).

b. [] Impermissible Victim Sympathy/Duty to Convict Arguments

Defendant alleges counsel should have objected to the following improper statements made by prosecutor in closing arguments:

1. "This case is about Kim Holmes standing up for his friend. He died a gentleman that night not a robber or attacker. He took of [*sic*] his very last breaths in the arms of the woman that he was trying to protect And he's not here to give you his side of the story. He's dead. We'll never know Kim Holmes'[s] version of [what] happened that night." (Trial Transcripts, May 22, 2008, p. 804).

2. "Kim looked so young he looked like he was not even old enough to be there. He looked like a little boy and said he had to get home to his momma that night." (Trial Transcripts, May 22, 2008, p. 809).

3. ". . . Mr. Peoples . . . want to go after little Kim . . ." (Trial Transcripts, May 22, 2008, p. 814).

4. ". . . he sees Peoples pushing little Kim up against the wall . . ." (Trial Transcripts, May 22, 2008, p. 814).

5. "Little Kim . . ." (Trial Transcripts, May 22, 2008, p. 861).

6. "It was Kim Holmes[,] a young guy trying to stick up for his friend being a gentlemen (sic) that night and it costed (sic) him his life. And Mr. Peoples need[s] to be held accountable for the murder of Kim Holmes. And the only verdict that is just and true in this case is as charged second degree murder with a weapon.'" (Trial Transcripts, May 22, 2008, p. 871).

c. [] Misstating/Misleading the Jury on Law

Defendant alleges counsel should have objected to the following improper statements made by prosecutor in closing arguments:

1. "So when you say that this case is about self-defense and you put on witnesses that they duly support that, that means that the State's case has been proven. You're saying this person was killed that night. I killed that person but I did it in self-defense. So essentially based upon the witnesses that they put on the case has already been stipulated to. Our case achieved." (Trial Transcripts, May 22, 2008, p. 806).

2. "But what the State's proved—proven in this case and what the defense has essentially done by saying this is [a] self-defense case we've proven this case beyond a reasonable doubt." (Trial Transcripts, May 22, 2008, p. 821).

3. "So what does all this mean? This means when you take away all the testimony in this case and you just look at the physical evidence. Just look at, use your common sense and look at the photos. Who is beaten to a pulp? Kim Holmes. Who is stabbed? Kim Holmes. And who has the injuries to their hands? Mr. Johnson and Mr. Peoples. . . . So when you take that alone and not even any testimony that alone shows Mr. Peoples and Mr. Johnson were the aggressors out there. And Kim was the victim . . . ." (Trial Transcripts, May 22, 2008, p. 859).

d. [] Shifting the Burden of Proof/Commenting on Defendant's Silence and Failure to Testify or Present Evidence

Defendant alleges counsel should have objected to the following improper statements made by [the] prosecutor in closing arguments:

1. "There [sic] no threat. There's no—there's no evidence here at all that anyone made any threats." (Trial Transcripts. May 22, 2008, p. 811).

2. "They want you to believe that[,] I guess[,] they're assuming they want you to assume because no one ever came out and said it in their testimony that Mr. Peoples had to stab Kim in self-defense to get away from this robbery or attack. No one said it. They want you to assume that. But how is that so if Mr. Peoples takes out and starts wielding the knife, that the only person that gets injured is Kim? . . . Kim's the smallest guy out of the group. Why would he stab the smallest guy? (Trial Transcripts, May 22, 2008, p. 863).

3. "Who's Christy Reed? . . . Why doesn't Christy Reed in her own investigation go down and give all this information to Detective Holder so he can sort it out? No. She doesn't do that. Why don't these people ever tell the police?" (Trial Transcripts, May 22, 2008, p. 864).

80

4. If all these people were grabbing at his chains nobody testified they're grabbing at his bracelet." (Trial Transcripts, May 22, 2008, p. 858).

At the evidentiary hearing Mobley testified as [to] statement (a)(1) she would not have objected in the context it was stated because the State was discussing evidence that was presented at trial and repeating what the witness testified. Evid. Hrg. Transc. p. 156.[9] As to statement (a)(2) . . . Mobley testified she would not have objected because the State was again explaining testimony presented at trial. Evid. Hrg. Transc. p. 157. As to statement (a)(3), Mobley testified she would not have objected because the statement was proper in closing argument where parties are permitted to argue inferences based on testimony presented at trial. Evid. Hrg. Transc. p. 157. As to statement (a)(4) Mobley testified she would not object because similar to (a)(l) the State was discussing what the witness testified to at trial. Evid. Hrg. Transc. p. 157–58. As to statement (a)(5) . . . Mobley testified she would not have objected because it was a proper comment on the evidence and she did not believe the comment was objectionable as vouching for the credibility of a witness. Evid. Hrg. Transc. p. 158.

As to (b)(l) Mobley testified she would not have objected because such comment is allowed in closing and the statements that the victim Holmes was protecting Cummings from the Defendant. Evid. Hrg. Transc. p. 158–59. As to (b)(2) Mobley testified she would not have objected because Lamb testified at trial that the victim looked so young and looked like a little boy so the State was arguing facts in evidence. Evid. Hrg. Transc. p. 159. As to (b) 3, 4, and 5, Mobley testified she would not have objected in the context the statements were made because Lamb testified the victim looked younger than the Defendant and there was size discrepancy between the victim and the Defendant with Defendant being 80 pounds bigger than the victim, which is something the jury can consider in a self-defense case. Evid. Hrg. Transc. p. 159–60. As to (b)(6) Mobley testified she would not have objected because the comment is a proper argument allowed in closing. Evid. Hrg. Transc. p. 160.

---

[9] The transcript of the June 20, 2014, Rule 3.850 evidentiary hearing is found at Doc. 21-4, Ex. 21 of the record. The page numbers cited in the state post-conviction court's order are the page numbers located in the upper right corner of the transcript.

As to (c)(1) and (2) Mobley testified she would not have objected because the comment followed the judge's colloquy with the Defendant prior to jury selection but she did clarify the State's comments in her closing argument. Evid. Hrg. Transc. p. 160–61. As to (c)(3) Mobley testified she would not have objected because the comment was a "proper argument based on the evidence that was presented, particularly the photographs and the testimony. I didn't like the argument, didn't agree with it, but I think it would have been a proper argument." Evid. Hrg. Transc. p. 162.

As to (d)(l) Mobley testified she would not have objected because it was a proper comment on the evidence or lack of evidence because there was no evidence of threats presented at trial. Evid. Hrg. Transc. p. 162. As to (d)(2) Mobley testified she would not have objected because the comment was not burden shifting or a comment on the Defendant's right to remain silent, that by putting on a defense the State was allowed to comment on the defense witnesses. Evid. Hrg. Transc. p. 163. As to (d)(3) Mobley testified she would not have objected because the defense witnesses indicated at trial they spoke to Christy Reed which is how they became defense witnesses and that she combated the comment by arguing in her closing that it is not the defense witnesses['] responsibility to go to the police, that it is the officer's responsibility to investigate potential witnesses. Evid. Hrg. Transc. p. 163–64. As to (d)(3) Mobley testified she would not have objected because she considered chain and bracelet to be interchangeable, so she thought it was not a big deal. Evid. Hrg. Transc. p. 164.

The Florida Supreme Court has held that "[w]ide latitude is permitted in arguing to a jury" and that "[l]ogical inferences may be drawn, and counsel is allowed to advance all legitimate arguments." *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982). Parties are permitted wide latitude in closing arguments to advance all legitimate arguments and draw logical inferences from the evidence. *See Lukehart v. State*, 776 So. 2d 906 (Fla. 2000); *see also Dessaure v. State*, 891 So. 2d 455, 468 (Fla. 2004) ("The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence.").

After reviewing the allegations, the testimony and evidence presented at the hearing, and the record, the Court finds the arguments cited by Defendant . . . are not improper and as such the Court finds counsel was not ineffective for failing to object. *See Mungin v. State*, 932 So. 2d 986, 007 (Fla. 2006) (holding that defense counsel was not ineffective for failing to object because none of the comments were improper); *see also Hitchcock v. State*, 991 So.2d 337, 361 (Fla. 2008) (finding defense counsel "cannot be deemed ineffective for failing to make a meritless objection."). . . . [T]he arguments in ground 12(a) do not rise to level of improper bolstering and vouching. While it is improper to lead the jury to believe the defendant carries the burden of introducing evidence, an exception exists when defendant voluntarily raises an issue that the defendant must prove, such as self-defense. *See Rodriguez v. State*, 753 So. 2d 29 (Fla. 2000). Raising an issue such as self-defense may prompt the prosecutor to comment on the lack of proof directed to the issue. *See id*.; *Otero v. State*, 754 So. 2d 765, 769 (Fla. 3d DCA 2000) (citing *Jackson v. State*, 575 So. 2d 181 (Fla. 1991)); *Raupp v. Starr*, 678 So. 2d 1358, 1361 (Fla. 5th DCA 1996). Additionally, the Court finds that defense counsel's decision not to object was also a reasonably strategic one because defense counsel believed the comments were not improper. The Court will not question this decision on collateral attack. *See Johnson*, 769 So. 2d at 1001. Defendant cannot show that defense counsel acted deficiently and cannot demonstrate that he was prejudiced by counsel's alleged deficiency. For the foregoing reasons no relief is warranted on [this] ground . . . .

While he may not go beyond the evidence presented to the jury, a prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). "To warrant reversal of a verdict[,] prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Thomas*, 8 F.3d 1552, 1561 (11th Cir. 1993).

Mr. Peoples fails to show that any of the challenged statements in the prosecutor's argument was improper.  Taken in the context of the entire trial, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting conviction amounts to a denial of due process.  *See Darden*, 477 U.S. at 181.  Consequently, Mr. Peoples fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by denying this ground of ineffective assistance of counsel.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

## Ground Twenty-one

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not "request[ing] an addition to the justifiable use of force jury instruction and fail[ing] to object to the confusing and misleading jury instructions on justifiable homicide."  (Doc. 1, p. 42).  Mr. Peoples alleges that he told counsel that he was attacked by the victim and four other men who threw him against a car and that he heard a woman scream that someone had a gun, although he knew that neither he nor his friend had a firearm.  Mr. Peoples claims that his "counsel was ineffective for failing to request that aggravated battery, assault, battery, or any attempt thereof be add[ed] to the list of forcible felonies in the jury instructions that Mr. Peoples would have been justified in using deadly force to resist."  (Doc. 1, p. 42).

Mr. Peoples further claims that his counsel was ineffective for not objecting to the jury instruction on justifiable use of force under *Talley v. State*, 106 So. 3d 1015 (Fla. 2d DCA 2013), and *Washington v. State*, 113 So. 3d 1028 (Fla. 5th DCA 2013), in which the state appellate courts concluded that the jury instruction identical to that given in Mr. Peoples's case was fundamentally erroneous.  Mr. Peoples contends that these alleged errors by counsel resulted in a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.

a. <u>Failure to request additional instruction and failure to object to confusing instruction</u>

Mr. Peoples presented these allegations to the state post-conviction court in two separate grounds in his Rule 3.850 motion (grounds 16 and 17).  The state post-conviction court denied the allegations of ineffective assistance of counsel challenging the allegedly "confusing and misleading" jury instructions after an evidentiary hearing as follows (Doc. 21-2, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief at 45–47):

> Defendant alleges counsel was ineffective for failing to request proper and necessary jury instructions on justifiable and excusable homicide and/or that counsel failed to object to confusing or misleading instructions on justifiable and excusable homicide. Defendant asserts that the jury instructions provided to the jury were inherently contradictory, where the justifiable use of deadly force instruction did not address an attempted aggravated battery. Defendant alleges the contradictory instructions were as follows:

85

(Instruction One) The use of deadly force is justifiable only if the defendant reasonably believe[s] that the force is necessary to prevent imminent death or great bodily harm to himself while resisting:

1. Another's attempt to murder him, or
2. Any attempt to commit robbery upon him or
3. Any attempt to commit a felony upon or in any dwelling, residence, or vehicle occupied by him.

(Instruction Two) A person is justified in using deadly force if he reasonably believes that such is necessary to prevent:

1. Imminent death or great bodily harm to himself or another, or
2. The imminent commission of a robbery against himself or another

Defendant asserts the instruction should have read "the use of deadly force is justifiable only if the defendant reasonable [sic] believed that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another[']s attempt to commit an aggravated battery upon him." Defendant argues the jury was left to determine whether the first instruction was proper because aggravated battery was not listed as an offense that would justify the use of deadly force. Defendant asserts but for counsel's failure to object to the contradictory instructions and request the aforementioned instruction, a reasonable probability exists that the result of the trial would have been different.

At the evidentiary hearing Mobley testified she discussed the jury instruction on justifiable homicide with the Defendant and co-counsel Fulgueria, and decided to not request an instruction that Defendant was justified if an aggravated battery was committed on him and instead requested an instruction that Defendant was justified if a robbery was committed on him. Mobley testified there was not enough evidence to show an aggravated battery, explaining[:]

> "[A]ggravated battery requires great bodily harm or a deadly weapon. I didn't have any evidence of great bodily harm or a deadly weapon. What I had was evidence that both—some of the, the witnesses were indicating that people were trying to take Mr. Peoples'[s] chains, which

was consistent with what he had already told me, so I had more—better evidence of a robbery."

Mobley testified the jury instructions as read at trial were not contradictory, they were part of the standard instructions and gave the jury an option to believe self-defense if they did not believe the robbery.

[Co-counsel] Fulgueria testified as to why [an] aggravated battery instruction was not requested in the justifiable homicide self-defense instruction as follows:

> "My recollection is there was no evidence of an aggravated battery as it relates to the victim against Mr. Peoples. My recollection was the extent of Mr. Peoples'[s] injuries, for aggravated battery you either need great bodily harm or a weapon. There was no evidence that the victim had a weapon or that Mr. Peoples had suffered any great bodily harm or injury as a result of the altercation. The other reason, my recollection is we even presented Defense witnesses and I recall a photo dealing with jewelry that had belonged to Mr. Peoples that was found in the victim's property at the hospital. And so, we were mainly focused on robbery for that reason because we believed there was evidence that in fact, the victim had potentially committed a robbery against Mr. Peoples based on Mr. Peoples'[s]—I believe it was a bracelet. It was some type of jewelry found at the hospital in the victim's property. So for  those two reasons we focused on robbery."

Fulgueria testified she believed the Defendant's jewelry being found in [the] victim's possession was powerful evidence of a robbery.

"Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Further, the defendant carries the burden of overcoming the presumption that a decision might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *see also Asay v. State*, 769 So. 2d 974, 984 (Fla. 2000).

"Counsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000).

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, and the record the Court finds counsel's trial strategy was to argue self-defense with the forcible felony of robbery as opposed to an aggravated battery because the evidence at trial supported that a robbery and did not support that at an aggravated battery occurred. Specifically, testimony indicated the victim was grabbing the Defendant's jewelry during the altercation and the Defendant's bracelets were found in the victim's possession at the hospital. On the contrary, there was no evidence or testimony of [the] victim or his associates possessing a weapon and no evidence or testimony of great bodily harm committed on the Defendant as define[d] by Florida law. The Court finds counsel's decision to argue self-defense to a robbery and request [a] jury instruction of the same based on the evidence presented at trial to be a reasonable trial strategy that the court will not second guess. *See Occhicone*, at 1048. Consequently, no relief is warranted on [this] ground . . . .

Mr. Peoples does not show that counsel's chosen trial strategy, viewed objectively in light of the evidence presented a trial, was so patently unreasonable that no competent attorney would have pursued it. *Dingle*, 480 F.3d at 1099. He fails to demonstrate that the state court unreasonably applied *Strickland* by denying relief on this claim of ineffective assistance of counsel. *See* 28 U.S.C. § 2254(d)(1), (d)(2).

b. Failure to object under *Tally* and *Washington*

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not objecting to the jury instructions based on the holding in *Talley v. State*, 106 So.

3d 1015, 1017 (Fla. 2d DCA 2013)[10], and *Washington v. State*, 113 So. 3d 1028 (Fla.

5th DCA 2013).[11]   The state post-conviction court summarily denied this claim of

ineffective assistance of counsel as follows (Doc. 21-2, Ex. 20, part 4, Order

Denying Motion for Leave to Amend Petition for Post-Conviction Relief to Include

Ground Alleging Fundamental Error, pp. 2–3):

> Defendant alleges counsel was ineffective for failure to raise and
> preserve an error concerning the jury instruction on justifiable use of
> non-deadly force. Defendant bases his claim on the recent Second
> District Court of Appeal opinion *Tally v. State*, 106 So. 3d 1016 (Fla.
> 2d DCA 2013)[,] in which the Court reversed a conviction for felony

---

[10] The standard jury instruction on the justifiable use of non-deadly force given to the jury in Mr.
Peoples's case included, *inter alia*, the following clause:

> If Chyvas Ariel Peoples was not engaged in an unlawful activity and was attacked
> in any place where he had a right to be, he had no duty to retreat and had the right
> to stand his ground and meet force with force, *including deadly force*, if he
> reasonably believed that it was necessary to do so to prevent death or great bodily
> harm to himself or to prevent the commission of a forcible felony.

(Doc. 19-3, Ex. 8, jury instruction 3.6(g)) (emphasis added). This is the same instruction that was
at issue in *Talley v. State*, 106 So. 3d 1015, 1017 (Fla. 2d DCA 2013). In that case, the defendant
argued on appeal that the jury instructions as given were "fundamentally erroneous because they
were misleading and eviscerated [the defendant's] only defense," and "that there is a comma
after the phrase 'including deadly force' in the standard jury instruction . . . but not in the
statutory section upon which the instruction is based." 106 So. 3d at 1017. The state appellate
court concluded that "the erroneous comma eliminated Talley's sole defense by suggesting that
Talley had no right to defend himself with any force whatsoever unless [the victim] threatened
him with deadly force" and that "[e]ven if [the victim] attacked Talley with nondeadly force,
Talley would have the duty to retreat according to this erroneous instruction." *Id.*

[11] *Washington v. State*, 113 So. 3d 1028 (Fla. 5th DCA 2013), holds that defense counsel's
failure to request an addition to the justifiable homicide jury instruction to include aggravated
assault and aggravated battery as felonies that the defendant would have been justified to resist
was ineffective assistance. When Mr. Peoples moved to amend his state Rule 3.850 motion to
add his claim that trial counsel was ineffective for not raising and preserving an error concerning
the jury instruction on justifiable use of non-deadly force, he argued entitlement to relief under
*Talley* but did not cite *Washington*. (Doc. 21-2, Ex. 20, part 4, Motion for Leave to Amend
Petition for Post-conviction Relief to Include and Additional Ground Alleging Fundamental
Error).

battery by finding a fundamental error in the standard jury instruction for justifiable use of non-deadly force. *See Tally v. State*, 106 So. 3d 1015 (Fla. 2d DCA 2013).

The Court first notes the Second District Court of Appeal affirmed Defendant's conviction and sentence in its mandate issued on May 13, 2010. As such, Defendant's two year time period for bringing a claim for post-conviction relief under Rule 3.850 expired on May 13, 2012. Thus, Defendant's August 5, 2013, Motion for Leave to Amend in which Defendant raises a new claim, ground 17, is untimely pursuant to Rule 3.850. Further, the fundamental error of the instruction on justifiable use of non-deadly force announced in *Tally v. State* has not been held to apply retroactively and thus, the Court finds ground 17 does not qualify under any of the enumerated exceptions to the two year time period under Rule 3.850(b). *See Tally v. State*, 106 So. 3d 1016 (Fla, 2d DCA 2013); *see also* Fla. R. Crim. P. 3.850 (b).

The Court notes, however, the two-year limitation does not preclude the enlargement of claims raised in a timely-filed motion for post-conviction relief. *See Brown v. State*, 596 So. 2d 1026, 1027–28 (Fla. 1992). Although Defendant does not allege ground 17 as an enlargement, the Court notes ground 16 of Defendant's initial timely filed motion for post-conviction relief alleges counsel was ineffective for failing to object to the confusing and misleading jury instructions on justifiable and excusable homicide. To the extent Defendant seeks ground 17 as an enlargement of ground 16 the Court will address the claim on the merits.

In ground 17, Defendant alleges counsel was ineffective for failing to raise and failure to preserve the error in the standard jury instruction 3.6(g) on justifiable use of non-deadly force. The Court first finds failure to object to a standard jury instruction is not ineffective assistance of counsel. *See Elledge v. State*, 911 So. 2d 57, 77 (Fla. 2005); *Thompson v. State*, 759 So. 2d 650, 665 (Fla. 2000) (holding that it was not deficient for counsel to fail to object to a standard instruction that had not been invalidated by the Florida Supreme Court). Further, failure to preserve an issue for appeal does not establish sufficient prejudice under *Strickland*. *See Strobridge v. State*, 1 So. 3d 1240, 1242

(Fla. 4th DCA 2009). For the foregoing reasons, the Court finds Defendant is not entitled to any relief on [this] ground….[12]

While Mr. Peoples's ineffective assistance of counsel claim is of federal constitutional dimension, his underlying claim challenging the statutory language in a jury instruction is a matter of state law.  The state post-conviction court by rejecting this claim of ineffective assistance of counsel has answered the question of what would have happened if counsel had challenged the jury instruction as Mr. Peoples suggests—the objection would have been overruled under state law.  *See Herring*, 397 F.3d at 1354–55; *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law]—the objection would have been overruled . . . .  Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").  Because the state post-conviction court concluded that the jury instruction was proper under state law, Mr. Peoples establishes neither deficient

---

[12] In its final order denying Mr. Peoples's Rule 3.850 motion the state post-conviction court reiterated its denial of this claim of ineffective assistance of counsel (Doc. 21-2, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief, pp. 47–49) (court's record citation omitted):

> While counsel questioned [co-counsel] Fulgueria at the evidentiary hearing concerning ground 17, specifically concerning *Tally v. State*, 106 So. 3d 1016 (Fla. 2d DCA 2013), the Court previously denied this claim . . . .  The Court again finds failure to object to a standard jury instruction is not ineffective assistance of counsel. *See Elledge v. State*, 911 So. 2d 57, 77 (Fla. 2005); *Thompson v. State*, 759 So. 2d 650, 665 (Fla. 2000).

performance nor resulting prejudice from counsel's alleged error.  *Strickland*, 466 U.S. at 691–92.  Mr. Peoples fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this claim of ineffective assistance of trial counsel.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).  Ground Twenty-one warrants no relief.

## Ground Five

Mr. Peoples contends that the trial court deprived him of his federal rights to a fair and impartial jury and due process by denying him a new trial based on an allegedly defective jury instruction on manslaughter.  During the trial the judge instructed the jury as follows (Doc. 19-3, Ex. 7, trial transcript, p. 876):

> To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt. One, Kim Lawson Holmes is dead. Two, subpart A, Chyvas Ariel Peoples intentionally caused the death of Kim Lawson Holmes or B, the death of Kim Lawson Holmes was caused by the culpable negligence of Chyvas Ariel Peoples. However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I previously explained those terms.

> In order to convict of manslaughter by intentional act it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.

Mr. Peoples alleges that the manslaughter instruction was fundamentally defective for three reasons (Doc. 1, p. 14):

> (1) instructing that inten[t] to cause death is an element of manslaughter

(2) combining the alternative "act" and "culpable negligence" forms of manslaughter in a single instruction

(3) including the non-applicable non-premeditated intent required clause

Mr. Peoples alleges that "intent to kill was expressly excluded by the information and by combining the two manslaughter alternatives[,] the jury was confused and misled as to what constitutes manslaughter." (Id., p. 15). He claims that this confusion was evinced by the jury's request during deliberation for a "clearer definition of manslaughter."[13]   (Id.).  Mr. Peoples also claims that the "premeditated intent" clause in the instruction was inapplicable and caused more confusion for the jury because intent was a disputed issue at trial.  The state appellate court denied relief on this ground in Mr. Peoples's direct appeal.  (Doc. 19-3, Ex. 16).

The United States Supreme Court has been clear that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation."  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).  Mr. Peoples can succeed on an improper jury instruction claim only if he can prove that the alleged

---

[13] During deliberation the jury sent the following inquiry to the trial judge (Doc. 19-3, Ex. 8, jury question dated May 22, 2008):

> We have read the definition of manslaughter with a weapon and 2nd degree murder with a weapon but need a clearer definition of both.

The trial judge advised the jury that it had to rely on the instructions and legal definitions already given.

error in the instruction "by itself so infected the entire trial that the resulting conviction violates due process, . . . not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

The jury instruction used in Mr. Peoples's trial tracked the standard instruction for manslaughter by act in effect at the time of Mr. Peoples's trial in 2008. *See* Fla. Std. Jury Instr. (Crim.) 7.7 (2007); *see also Pardo v. State*, 596 So. 2d 665, 667 (Fla. 1992) ("'[I]f the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it.'") (citation omitted). After the state appellate court affirmed Mr. Peoples's conviction, the Supreme Court of Florida held in *State v. Montgomery*, 39 So. 3d 252, 256–58 (Fla. 2010), that the standard manslaughter instruction was erroneous.

Mr. Peoples fails to show that the instruction was defective because the trial court used the standard instruction approved by the state appellate court at the time of trial. Accordingly, he cannot establish a federal due process violation. *See Henderson*, 431 U.S. at 154. The state appellate court neither unreasonably applied controlling Supreme Court precedent nor unreasonably determined the facts by rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (d)(2). Ground Five warrants no relief.

**Ground Three**

Mr. Peoples contends that the trial court committed "*per se* reversible fundamental error" by omitting from the verdict form the lesser-included offense of aggravated battery with a deadly weapon.  He alleges that the defense specifically requested a jury instruction on this lesser-included offense "on the theory . . . that Mr. Peoples stabbed Mr. Holmes in self-defense, but that did not cause his immediate death, meaning he died later at the hospital." (Doc. 1, p. 12).  Mr. Peoples alleges that the verdict form "included only the option of aggravated battery (great bodily harm) and omitted the requested option of aggravated battery (deadly weapon) on which the jury was instructed."[14]  (Id.).  He claims that the trial court's error deprived the jury of an opportunity to exercise its pardoning power and

---

[14] The verdict form included the following options for the jury's consideration (Doc. 19-3, Ex. 8, verdict form):

   A.  The defendant is guilty of Murder in the [S]econd Degree with a Weapon as charged.

   B.  The defendant is guilty of Murder in the Second Degree.

   C.  The defendant is guilty of Manslaughter with a Weapon.

   D.  The defendant is guilty of Manslaughter.

   E.  The defendant is guilty of Aggravated Battery (Great Bodily Harm) with a Weapon.

   F.  The defendant is guilty of Aggravated Battery (Great Bodily Harm).

   G.  The defendant is guilty of Battery.

   H.  The defendant is guilty of Culpable Negligence.

   I.  The defendant is not guilty.

deprived him of his federal rights to a fair and impartial jury and due process. The state appellate court rejected this ground in Mr. Peoples's direct appeal.[15] (Doc. 19-3, Ex. 16).

During the charge conference, trial counsel argued entitlement to a jury instruction on several lesser-included offenses, including aggravated battery. (Doc. 19-3, Ex. 7, trial transcript, pp. 763–64). Contrary to Mr. Peoples's contention, counsel's argument on deadly force was in refence to self-defense and not to the inclusion of aggravated battery with a deadly weapon as a lesser-included offense.[16]

---

[15] Mr. Peoples appears to have raised this ground, as well as Grounds Four and Five of the federal petition, in his *pro se* supplemental direct appeal brief. The record does not include, and the parties have not provided, a copy of the brief. (Doc. 26). This Court cannot determine whether Mr. Peoples presented these grounds to the state court as violations of state law or as federal constitutional violations. *See* Doc. 26. The Respondent does not assert that Mr. Peoples failed to federalize these grounds or that the grounds are procedurally defaulted. Generally, before applying a procedural bar, the Court first affords the petitioner the opportunity to show cause and prejudice for the default, or that a fundamental miscarriage of justice would result if the court fails to consider the claim. *Magouirk v. Phillips*, 144 F.3d 348, 358–60 (5th Cir. 1998); *Esslinger v. Davis*, 44 F.3d 1515, 1528 (11th Cir. 1995). However, assuming, *arguendo*, that Mr. Peoples presented the claims to the state court, because the Court determines that Grounds Three, Four, and Five of the federal petition fail on the merits, additional briefing on the application of the procedural default doctrine is unnecessary.

[16] Mr. Peoples's alleges that trial counsel specifically requested a jury instruction on aggravated battery with a deadly weapon "on the theory . . . that Mr. Peoples stabbed Mr. Holmes in self-defense, but that did not cause his immediate death, meaning he died later at the hospital." (Doc. 1, p. 12). Counsel's argument actually referred to self-defense and the use of deadly or non-deadly force. Specifically, counsel argued the following (Doc. 19-3, Ex. 7, trial transcript, pp. 763–64) (emphasis added):

> THE COURT: And then 3.3(b) aggravation of a felony, carrying a weapon other than a firearm, any objection?
>
> [COUNSEL]: No.
>
> THE COURT: Then after that is 3.4 lesser includes. And I remember this—the defense had more than what is included here for lessers, right?

Citing *Crawford v. State*, 858 So. 2d 1131 (Fla. 2d DCA 2003), the State correctly argued in its direct appeal brief that, because the prosecution pursued a weapon enhancement under section 775.087, Florida Statutes, the verdict form could not include an option for aggravated battery with a deadly weapon. (Doc. 19-3, Ex. 14, pp. 29–30).

Accordingly, Mr. Peoples fails to show that the verdict form erroneously omitted the lesser-included offense of aggravated battery with a deadly weapon. He fails to demonstrate a violation of his federal rights to either due process or a fair trial. Consequently, he fails to establish that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (d)(2). Ground Three warrants no relief.

**Ground Eighteen**

---

[COUNSEL]: Yes, aggravated battery, aggravated assault and aggravated battery, battery[,] and culpable negligence. And, Judge, here's our rationality if you'd like to hear. The case law that says we're entitled to both [a] deadly force and [a] non-deadly force instruction in a self-defense case even if the victim is deceased, that the only thing that's absolute deadly force is a—is when there's a firearm involved, meaning this jury could very well find *self-defense in a deadly vers[u]s non-deadly if in fact they felt Mr. Peoples stabbed Mr. Holmes but that didn't cause his immediate death, meaning he died later at the hospital.*

It's the nature of the force used and the stabbing itself we think we should get the aggravated battery, battery or culpable negligence if in fact this jury could believe that the force used by Mr. Peoples did not cause the death of Mr. Holmes. That it was just in fact an aggravated battery or a battery or culpable negligence.

Mr. Peoples contends that his trial counsel rendered ineffective assistance by not objecting to the omission on the verdict form of the lesser-included offense of aggravated battery with a deadly weapon. He alleges that "the verdict form provided to the jury included only an option for aggravated battery (great bodily harm) and omitted an option for the jury to return a verdict as to the additionally instructed . . . form of aggravated battery (deadly weapon)." (Doc. 1, pp. 37–38). Mr. Peoples argues that the jury was deprived of the option to convict on the omitted offense and that counsel's failure to object to the verdict form resulted in prejudice. Mr. Peoples asserts that this alleged error resulted in a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.

The state post-conviction court summarily denied this ground of ineffective assistance of counsel as follows (Doc. 21-2, Ex. 20, part 4, Order Granting Evidentiary Hearing In Part, Reserving Ruling In Part, and Denying In Part Motions for Post-conviction Relief, pp. 3–4) (court's record citations omitted):

> Defendant alleges ineffective assistance of counsel due to counsel's failure to object to the verdict form provided to the jury because the form omitted an option for the lesser included offense of aggravated battery with a deadly weapon even though the jury had been instructed on that offense. Defendant alleges that the verdict form contained an option for aggravated battery causing great bodily harm but omitted an option for aggravated battery with a deadly weapon. Defendant alleges but for counsel's error, there is a reasonable probability the jury would have found him guilty only of the lesser included offense of aggravated battery with a deadly weapon.

98

The State argues [that] although only "great bodily harm" was listed after "aggravated battery" on the verdict form and "deadly weapon" was omitted, the words "great bodily harm" could have been deleted from the verdict form. However, the State argues despite this typographical error the Court informed the jury during instructions that aggravated battery can be proven by two theories, great bodily harm or deadly weapon pursuant to Florida Statute § 785.045. Additionally, the written instructions provided to the jury included language that aggravated battery can be found by two theories, "great bodily harm," or "used a deadly weapon." The State contends [this] ground . . . should be denied because the jury was adequately instructed on the elements of aggravated battery and the two possible theories for finding a defendant guilty of such under Florida Statute § 785.045.

The Court finds although counsel did not object to the apparent typographical error on the verdict form, the jury was adequately instructed on the two possible theories of aggravated battery under Florida Statute § 785.045, great bodily harm and deadly weapon. *See also Graham v. State*, 100 So. 3d 755 (Fla. 1st DCA 2012) (finding no error in the trial court listing lesser-included offenses on aggravated battery after, instead of before, attempted voluntary manslaughter on the verdict form by finding the jury was accurately instructed on the elements of both offenses); *Duvall v. State*, 835 So. 2d 1224 (Fla. 4th DCA 2003) (finding jury was properly instructed on the elements of the crime despite an error on the verdict form in which the word "attempt" was included with the charge of grand theft); *Lyons v. Sate*, 690 So. 2d 695 (Fla. 3d DCA 1997) (affirming denial of post-conviction relief where failure to include the word "armed in charge of armed robbery on verdict form was a typographical oversight, stating, "The typographical error was immaterial and there is no danger that the jury was misled."). As such, the Court finds Defendant was not prejudiced by counsel's lack of objection. Accordingly, no relief is warranted on [this] ground . . . .

The record shows that the trial judge orally instructed the jury on both aggravated battery with great bodily harm with a weapon and aggravated battery

with great bodily harm.[17]  The written instructions provided to the jury include both theories of aggravated battery.  (Doc. 19-3, Ex. 8, jury instruction 8.4).  Contrary to Mr. Peoples's contention, the verdict form also includes both types of aggravated battery in addition to the other lesser-included offenses.   (Id., verdict form). Consequently, his claim finds no evidentiary support.  Mr. Peoples fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by denying this ground of ineffective assistance of counsel.[18]  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Nineteen**

Mr. Peoples contends that the cumulative effect of counsel's errors resulted in a denial of his rights to a fair trial, effective assistance of counsel, and due process under the Fifth, Sixth, and Fourteenth Amendments.

---

[17] The trial judge instructed the jury as follows (Doc. 19 3, Ex. 7, trial transcript, pp. 878–79):

> [I]f you find that Chyvas Ariel Peoples committed aggravated battery great bodily harm and you also find that during the commission of the crime Chyvas Ariel Peoples carried, displayed, used, threatened to use or attempted to use a weapon, you should find the defendant guilty of aggravated battery, great bodily harm with a weapon.

> Again a weapon is legally defined to mean an object that could be used to cause death or inflict serious bodily harm.

> If you find only that Chyvas Ariel Peoples committed aggravated battery, great bodily harm but did not carry, display, use, threaten to use or attempt to use a weapon then you should find the defendant guilty only of aggravated battery, great bodily harm.

[18] The state court's order overlooks the inclusion of "aggravated battery (great bodily harm) with a weapon" on the verdict form.

The state post-conviction court denied this ground of ineffective assistance of counsel after an evidentiary hearing as follows (Doc. 21-2, Ex. 20, part 5, Final Order Denying Motions for Post-Conviction Relief, p. 43):

> After reviewing Defendant's allegations, the court file, and record, the Court finds that because all of Defendant's claims lack merit, Defendant's claim of cumulative error also fails. *See Griffin v. State*, 866 So. 2d 1, 22, (Fla. 2003) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit, and [the defendant] is not entitled to relief on this claim."). As such, the Court finds no relief is warranted on [this] ground.

"Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984); *see also Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [petitioner] received a fair trial as is [his] due under our Constitution."). Because each of the grounds of ineffective assistance of counsel in Mr. Peoples's federal petition lacks merit, no cumulative prejudicial effect results. *See Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of [counsel's] cumulative errors does not warrant habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002). The state post-conviction court neither unreasonably applied controlling

Supreme Court precedent nor unreasonably determined the facts by rejecting this ground.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Grounds Twenty-two and Twenty-three**

In Ground Twenty-two Mr. Peoples contends that under state law, "the statutory maximum sentence for a person such as Mr. Peoples is immunity from a sentence" and that his sentence "is illegal because the trial court was not allowed to sentence him beyond the statutory max of immunity once Mr. Peoples claimed self-defense."  (Doc. 1 at 43–44).  In Ground Twenty-three Mr. Peoples contends that his sentence is "illegal under Rule 3.800[,] Florida Rule of Criminal Procedure[,] where the jury instructions on manslaughter were erroneous because they imposed an improper 'intent to kill element' for the jury to consider."  (Id. at 44–45).  The state court rejected both Ground Twenty-two and Twenty-three in Mr. Peoples's state Rule 3.800(a) motion to correct an illegal sentence.[19]

---

[19] The state court denied relief as follows (Doc. 21-4, Ex. 23, pp. 1–2):

> After reviewing Defendant's Motion, the court file, and the record, the Court finds Defendant's claims are not properly raised in the instant motion. Florida Rule of Criminal Procedure 3.800(a) is the appropriate procedure for challenging a sentence, but not a conviction. *Wiley v. State*, 604 So. 2d 6, 7 (Fla. 1st DCA 1992).

> Rule 3.800(a) "is intended to provide relief for a narrow category of cases in which the sentence imposes a penalty that is simply not authorized by law. It is concerned primarily with whether the terms and conditions of the punishment for a particular offense are permissible as a matter of law. [It] is not a vehicle designed to re-examine whether the procedure employed to impose punishment comported with statutory law and due process." *Judge v. State*, 596 So. 2d 73, 77 (Fla. 2d DCA 1991). Procedural issues, due process claims, double jeopardy

While Mr. Peoples did assert a defense of self-defense at trial, he did not assert a "Stand Your Ground" defense under section 776.032, Florida Statutes. Accordingly, his sentence cannot be deemed illegal based on an inapplicable statute. Consequently, he fails to show that the state court's rejection of these grounds resulted in the violation of a federal constitutional right.  Grounds Twenty-two and Twenty-three warrant no relief.

**Ground Twenty-eight**

Mr. Peoples contends that his sentence "was illegal because the commitment and probable cause orders were void, illegal, or unauthorized per Mr. Peoples['s] claim of self-defense under Fla. Stat. 776.032, which had the effect of denying Defendant a fair and impartial trial pursuant to due process as accorded by the 5th and 14th Amendments."  (Doc. 1, p. 51).  He alleges that "the lower court's probable cause and Florida Department of Corrections [c]ommitment orders were unauthorized, illegal, or void because Mr. peoples claimed self-defense to all charges in his case which gave him immunity until a judge made a[n] immunity

---

violations which inherently attack the conviction, errors that are not apparent on the face of the record or sentences that could have been legally imposed, however excessive, are not cognizable in rule 3.800(a) motions. *Id*. As Defendant's allegations attack his conviction, the Court finds they are not cognizable in a rule 3.800(a) motion. Accordingly, Defendant is not entitled to any relief.

Both grounds are unexhausted and procedurally barred based on an independent and adequate state law ground. However, the Respondent does not assert the procedural bar.

determination against him." (Id.). Mr. Peoples asserts that the state court made no probable cause determination as to whether his use of force was lawful and that he was immune from criminal prosecution when he asserted self-defense at his first appearance.

Again, although couched in terms of due process, the gravamen of Mr. Peoples's claim is the application of a state statute. Re-examination of this state law issue is precluded on federal habeas review. *Estelle*, 502 U.S. at 67–68. Ground Twenty-eight warrants no relief.

Accordingly, Mr. Peoples's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk must enter a judgment against Mr. Peoples and **CLOSE** this case.

## <u>DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS</u>

Mr. Peoples is not entitled to a certificate of appealability ("COA"). Under Section 2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Mr. Peoples must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v.*

*Linahan*, 279 F.3d 926, 935 (11th Cir. 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Mr. Peoples is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Mr. Peoples must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** at Tampa, Florida, on August 3, 2023.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**